## Thomas A. McLaurie

*v.*

## Reuben C. Barnes *et al.*

1. SPECIFIC PERFORMANCE—*barred by laches.* A party purchased a tract of land in 1856, to be paid for in three annual instalments, put his contract on record, and took possession of the land. He paid the first and part of the second note during the first two years, and, after the third one became due, his vendor moved to another State, and took the notes with him. The purchaser made no effort to find him, to pay the notes. About the time the last one became due, the vendor confessed a judgment in favor of his creditor. An execution was issued on the judgment, the land sold under it, and the creditor became the purchaser, and acquired a sheriff's deed in 1860, and thereupon turned the vendee out of possession, and, on the 22d of February, 1861, the judgment creditor filed a bill against his debtor and the vendee of such debtor, to remove the contract of sale between them, as a cloud on his title. The vendee, in September, 1866, filed a cross-bill, to which a demurrer was sustained, and thereupon the complainant in the cross-bill dismissed it, and the complainant in the original bill dismissed that. In October, 1867, the vendee filed his bill against the various parties in interest, for a specific performance of his contract of purchase: *Held,* that there was such delay, unexplained by equitable grounds of excuse, as indicated an abandonment of the purchase, and that he was barred by his *laches.*

2. EXECUTION—*interest in land subject thereto.* The interest of the vendor in such case was such an interest as could be properly levied on and sold under execution.

WRIT OF ERROR to the Circuit Court of Champaign county; the Hon. ARTHUR J. GALLAGHER, Judge, presiding.

Messrs. BLACK & GERE, for the plaintiff in error.

Mr. E. S. TERRY, and Mr. E. L. SWEET, for the defendants in error.

Mr. JUSTICE WALKER delivered the opinion of the Court:

On the 4th day of July, 1855, one Thomas contracted to sell and convey to defendant Barnes, a 40-acre tract of land. Barnes went into immediate possession of the premises, and

the bond was duly recorded.   The consideration agreed to be paid was $2000—$200 in cash, $100 on the 1st of the next September, $200 the 1st of March, 1866, the balance to be paid in two equal yearly instalments.   Barnes, at different times, sold small portions of the land to various persons, with the consent of Thomas, who in some cases received the purchase money and executed deeds directly to the purchasers.

On the 4th day of July, 1856, Barnes sold to plaintiff in error 9 acres, a part of the 40-acre tract, for $2500, for which the latter gave his three several promissory notes, for equal amounts, due in one, two and three years, with 6 per cent interest, and Barnes gave to him a bond for the conveyance of the land on the payment of the purchase money.   Plaintiff in error immediately went into possession.   Within the first year he paid the first and a portion of the second note. When the last note fell due, the balance of the money was not paid or tendered, nor a deed demanded, nor was any tendered to him.   In September, 1859, after the money was all due, Barnes removed to Kansas, taking with him the unpaid notes.

It is claimed, and there is evidence tending to prove, that from the sale of the property other than to plaintiff in error, Thomas was fully paid the purchase money on his sale to Barnes.   In April, 1858, Barnes gave to Thomas a power of attorney to confess a judgment on the two last notes given to him on the purchase of the 40-acre tract, on which a judgment was confessed.   An execution was issued on the 13th of July, 1858, which was levied on the 9 acres sold by Barnes to plaintiff in error, and, on the 13th of the following September, the land was sold by the sheriff to Thomas, for $1770.97, who gave to him a certificate of purchase, and, on the 14th day of January, 1860, the land not having been redeemed, the sheriff executed to Thomas a deed for the 9 acres.   Thereupon, plaintiff in error was forcibly ejected from the possession of the premises.

On the 22d of February, 1861, Thomas filed a bill in equity against Barnes and plaintiff in error, to cancel and remove the contract between them for the sale of the land, as a cloud on his title. On a hearing, a decree was rendered in favor of Thomas, and plaintiff in error appealed the case to this court. where the decree was reversed and the cause remanded. Thereupon plaintiff in error, on the 26th of September, 1866, filed a cross-bill in the case, to which a demurrer was sustained. and, in April following, he voluntarily dismissed his cross-bill, and Thomas dismissed his bill.

Pending the appeal, Thomas sold the 9 acres in different parcels to three several persons, and, on the 12th day of October, 1867, plaintiff in error filed this bill against the various parties in interest.

On a final hearing, the court below refused the relief asked, and dismissed the bill. To reverse that decree this writ of error is prosecuted, and various grounds are urged for a reversal. But. in the view we take of the case, the great and controlling question is, whether plaintiff in error has acted with that promptness in performing his part of the contract, which a court of equity always requires before specifically enforcing such contracts; whether he has shown such an equitable excuse for his non-performance as accounts satisfactorily for the delay.

If. as is claimed by plaintiff in error, Barnes had paid the original purchase money on the 40 acres. then the only right which Thomas acquired by the execution sale and sheriff's deed of plaintiff in error in the 9 acres, was that held by Barnes. Nothing more, nothing less. Barnes' interest in that tract was only subject to sale on execution by virtue of the 1st section of the chapter entitled "Judgments and Executions." It provides that lands, tenements and real estate shall be liable to sale on execution in the manner provided in that chapter, and the section defines the term, "real estate," to embrace "all interest of the defendant or any person to his use, held or obtained by virtue of any deed, bond, covenant

or otherwise, for a conveyance, or as mortgagee or mortgagor, of lands in fee, for life, or years." This language is broad enough to include Barnes' interest, whether under his bond from Thomas or "otherwise," and the sale was authorized.

After Thomas purchased, and he received his sheriff's deed, he became possessed of Barnes' interest, and assuming, as the evidence tends to show, and defendants earnestly claim, the original purchase money was paid for the 40, including this tract, then Thomas became liable to perform Barnes' contract with plaintiff in error, when he should comply with his part of the agreement. Thomas purchased charged with notice, as Barnes' bond for a conveyance was recorded before Thomas obtained his judgment. This, then, left plaintiff in error only to pay the balance of the purchase money he had agreed to pay to Barnes, to Thomas, and receive a deed. Thomas occupying the same relation to the contract that Barnes had previously done, plaintiff in error only had to pay to Thomas what he owed on the purchase, and receive his deed. In this there was no complication or legal difficulty or uncertainty.

This was the undoubted attitude of the parties, and had plaintiff in error, on receipt of the deed by Thomas, paid the money, we have no doubt Thomas would have complied with his plain legal duty, by conveying to him the land, in pursuance of the terms of Barnes' bond; or had he obstinately refused, he could have made a tender, and kept it good, and compelled a conveyance. It is, however, said that plaintiff in error did not know whether his notes were still held by Barnes, or had been negotiated before maturity. We presume, as nothing is shown to the contrary, that, had plaintiff in error made slight efforts, he could have found where Barnes then resided, and could, by letter or otherwise, have learned whether he still held the notes. To have done so, would have required no more than ordinary diligence; but the record is, so far as we have been able to discover, barren of all evidence that any effort was made for the purpose.

There having been no impediment to the payment of the purchase money by plaintiff in error, when Thomas received his sheriff's deed but a few days after the last instalment fell due on the purchase money, plaintiff in error should have paid, or at least tendered it to Thomas, and demanded a conveyance, within a reasonable time; but this he failed to do, and, so far as we can see, has never made an unconditional offer to pay the money. He took no active steps toward asserting his claim and to have it enforced, until he filed his cross-bill, on the 26th of September, 1866, six years and nearly nine months after he could have made payment and enforced his contract, which he should have been ready, willing and eager to perform. Such delay, unexplained by equitable grounds of excuse, we regard as *laches*, that indicates an abandonment of the purchase.

In such a length of time, great changes are likely to occur in the situation and condition of parties. Values are subject to fluctuations and great changes in such a period of time; and although time, in this case, was not made of the essence of the contract, still, in such cases, after such delay, a court of equity will not enforce the contract unless there are circumstances which indicate that the non-performance has been induced, or at least sanctioned, by the vendor, or the parties have so acted as to render it inequitable to permit the vendor to hold the land, or some other equity has intervened that requires a specific performance. We see none such in this case. It is simply a neglect, on the part of plaintiff in error, to keep and perform his part of the agreement within such time as would entitle him to compel a conveyance. He is barred by his *laches*.

It could not matter, with plaintiff in error, whether Thomas overreached and defrauded Barnes or not, as he only had to pay Thomas the balance of the purchase money in proper time, and receive a deed. If Thomas defrauded Barnes, that concerned Barnes and not plaintiff in error. Anything they did in reference to the judgment sale and receiving the

sheriff's deed, could not affect plaintiff in error, had he stood upon and performed his part of the agreement. Suppose Barnes had quitclaimed this land to Thomas, then it is obvious that he would have been compelled, on payment of the balance of the purchase money, to convey to plaintiff in error, although there might have been fraud on the part of Thomas in procuring the quitclaim deed. And in what does the two cases differ ?

Perceiving no error in the record, the decree of the court below is affirmed.

*Decree affirmed.*