JOHN W. WEHN, JR., APPELLEE, v. WILLIAM H. FALL ET AL., APPELLANTS.

FILED JUNE 23, 1898. No. 8154.

1. **Vendor and Vendee:** TIME TITLE VESTS. A contract for the purchase of land made *bona fide* for a valuable consideration vests the equitable interest therein in the vendee from the time of the execution of the contract, although the money is not then paid.

2. ———: LIEN OF JUDGMENT: APPLICATION OF PAYMENT. The mere docketing of a judgment against a vendor of real estate is not notice to the vendee in possession, and does not impose on him a duty to apply deferred installments of the purchase price in satisfaction of such judgment.

3. ———: ———: ———. But a judgment of the district court, against a vendor of land who retains the legal title, attaches as a lien to such land, and, as against a vendee in possession with actual notice, may be enforced to the extent of the unpaid purchase price.

4. Counter-Claim: CORPORATIONS: LIABILITY OF STOCKHOLDERS. In an action by a stockholder of an insolvent corporation to enjoin an execution sale of real estate which had been purchased by him from the members of a firm against whom the defendant had recovered the judgment on which the execution was issued, the answer charged that all the stockholders of such corporation were liable for the payment of the debt which was the basis of the judgment, and asked that they be brought in and required to pay the same. *Held*, Not to constitute a counter-claim within the meaning of section 99 of the Code of Civil Procedure.

5. Corporations: LIEN OF CREDITORS. Creditors of an insolvent corporation do not acquire any specific lien on the corporate assets.

6. Action Against Dissolved Corporation. Under the provisions of section 68, chapter 16, Compiled Statutes 1897, an action against a dissolved corporation may be commenced and prosecuted to final judgment.

7. ———: LIABILITY OF STOCKHOLDERS: CREDITORS. And until the legal remedy has been exhausted a creditor of an insolvent and dissolved corporation cannot obtain satisfaction of his claim by suit against a stockholder who has in any way come into possession of corporate assets.

APPEAL from the district court of Hamilton county. Heard below before BATES, J.  *Affirmed*.

*Hainer & Smith,* for appellants.

*A. W. Agee* and *H. M. Kellogg, contra.*

SULLIVAN, J.

In January, 1888, the Phillips Building & Loan Association drew a check on the Bank of Phillips in favor of Samuel Spanogle for $495. Spanogle indorsed the check to Jerome H. Smith, who deposited it for collection with the First National Bank of Aurora. In due time the Aurora bank presented it for payment to the Phillips bank, which, being then unable to meet its obligations, was compelled to refuse payment. Smith thereupon sued John Fonner, A. J. Spanogle, Samuel Spanogle, and Charles L. Crane, as members of the firm of John Fonner & Co. and owners of the Bank of Phillips. This suit ripened into a judgment in the district court of Hamilton county on the 12th day of February, 1889. On January

30, 1888, the firm of John Fonner & Co. suspended its banking business at Phillips and turned over its entire assets to Chris Schlotfeldt, of Grand Island, with written authority to sell the same and apply the proceeds in payment of the partnership indebtedness.   Schlotfeldt accepted the trust or agency, and, on March 9, 1888, contracted with the plaintiff, John W. Wehn, Jr., to sell him the real estate in controversy, being a town lot in the village of Phillips, in Hamilton county.   Wehn was given immediate possession of the property, but did not obtain a deed therefor nor pay any part of the purchase price until after Smith had recovered his judgment against the members of the firm of John Fonner & Co. Upon this judgment an execution was issued, and Fall, as sheriff of Hamilton county, was proceeding thereunder to sell the real estate in question when this action was commenced to enjoin the sale.   A temporary injunction was granted and on the final hearing made perpetual.

It is first insisted on behalf of the appellants that the instrument executed by John Fonner & Co. was an irregular assignment and of no validity.   Whether or not it was intended as an assignment is quite immaterial. Between the parties to the transaction it was valid.   It conferred on Schlotfeldt power to take possession of the assets of the bank and sell the same.   Consequently the contract made with Wehn for the sale of the lot in Phillips was within the scope of his authority and was a binding contract.   It thus appears that Wehn was a purchaser of the lot and in possession of the same without having paid any part of the purchase price when Smith's judgment attached as a lien.   Under these circumstances Smith became entitled to intercept the purchase-money and have the same applied in satisfaction of his judgment upon giving Wehn notice of his rights.   It is not claimed that there was any actual notice, and constructive notice from the docketing of the judgment, we think, was not sufficient.   In *Courtnay v. Parker*, 16 Neb. 311, it is said: "Where a judgment is recovered against one who has

agreed to sell land, but made no deed nor received the whole of the purchase-money, it is a lien on the vendor's interest in the land, and a purchaser under the judgment is entitled to the money remaining unpaid." Neither the question of notice or possession was considered in that case. In *Olander v. Tighe*, 43 Neb. 344, the rule on this subject is stated in the syllabus as follows: "A judgment recovered in the district court against the vendor of land which is situate in the county in and for which the court is held, who has not, at the time of the recovery of the judgment, executed and delivered a deed for the land or received all the purchase-money, is a lien upon the interest of the vendor in the land, viz., the unpaid purchase-money; and a levy of an execution issued upon such judgment on the land, and a sale thereunder, will pass to the purchaser the interest of the vendor." In this case it was held that the rights of the judgment creditor were superior to the rights of a vendee in possession who had paid a portion of the purchase price after the recovery of the judgment; but it does not appear from the statement of facts that the purchaser was without actual notice, and the question of notice is not considered or discussed. The question was, however, very thoroughly considered in the case of *Filley v. Duncan*, 1 Neb. 134, and the conclusion reached that while a judgment recovered against the vendor of lands is a lien to the extent of the unpaid purchase price due from the vendee in possession, "the entry of such judgment will not, of itself, compel the vendee in possession under contract to make subsequent payments to the creditor." Discussing this question Mr. Freeman in his work on Judgments, section 364 [4th ed.], says: "While it is everywhere conceded that a judgment lien accruing against a vendor after the making of the contract of sale extends to all his interest remaining in the land, and entitles the purchaser at the sale to all sums still to be paid by the vendee, yet it is well settled that the latter, if in possession of the lands sold, is not bound to ascertain, before making each pay-

ment, that no judgment has been obtained against his vendor. Whoever takes and keeps possession of land, by these acts of ownership gives such notice of his rights to the whole world that no one can safely assume to act in ignorance of them. He is so far exempted from the operation of the registry acts that a deed made by his grantor can in no event prejudice his interests; and so far exempted from the operation of the law charging all persons with notice of the lien arising from the docketing of a judgment that such docketing, while he is in possession of the land, is not notice to him of the charge thereby created on the purchase-money remaining unpaid. He may, therefore, from time to time, pay to this vendor such sums as fall due; and he will always be entitled to the benefit of such payments, unless it can be shown that they were made with actual knowledge of a lien on the vendor's interest in the land. This construction of the law seems to have been dictated by a consideration of the hardship to be inflicted on the vendee in possession by establishing a different rule." In support of the rule thus announced the author cites *Filley v. Duncan, supra; Parks v. Jackson,* 11 Wend. [N. Y.] 442; *Moyer v. Hinman,* 13 N. Y. 180; *Hampson v. Edelen,* 2 Har. & J. [Md.] 54. No case is cited as holding a contrary doctrine. In section 438 of 1 Black on Judgments it is said: "At any rate, it appears to be well settled that the docketing of the judgment is not notice of the lien to the purchaser in possession, since, after he has taken his contract for the purchase, he is not bound to keep the run of the dockets; and payments subsequently made by him to the judgment debtor, pursuant to the contract, without actual notice of the judgment, are valid as against its lien upon the land." (See also to the same effect 12 Am. & Eng. Ency. Law [1st ed.] 113.)

There is another question in the case. The appellant Smith in his answer alleged that the Phillips Building & Loan Association was indebted to him as drawer of the check on which his judgment against the members of the

firm of John Fonner & Co. is based; that said association
has dissolved and divided its entire assets among the
stockholders; that Wehn and a number of other persons
named in the answer were stockholders at the time of the
dissolution and received some portion of the corporate
property. There was a prayer that the persons alleged
to be stockholders be made parties to the action and re-
quired to pay the amount due on the check. Proceed-
ings were afterwards had in the case which resulted in
a trial of issues formed by said stockholders pleading to
the matters contained in Smith's answer. The findings
and judgment of the court were in favor of the stockhold-
ers. The only question presented for decision by the pe-
tition was whether Smith's judgment was a lien on
Wehn's real estate. The primary and controlling ques-
tion presented by the answer was whether the loan asso-
ciation was under a contractual liability as drawer of the
check. Between these questions there was no such legal
relationship as to justify their trial in the same action.
But the court having tried them together and found in
favor of the stockholders, we will inquire whether the
conclusion reached on the merits was correct. The assets
of a corporation, which, of course, includes unpaid stock
subscriptions, constitute a fund to which creditors may
resort for the satisfaction of their claims. But to reach
assets in the hands of a stockholder creditors must pur-
sue the remedy prescribed by law. By section 4, article
11 (Miscellaneous Corporations), of our constitution it is
provided: "In all cases of claims against corporations and
joint stock associations, the exact amount justly due shall
be first ascertained, and after the corporate property
shall have been exhausted, the original subscribers
thereof shall be individually liable to the extent of their
unpaid subscription, and the liability for the unpaid sub-
scription shall follow the stock." Of this provision of the
constitution it was said by RAGAN, C., delivering the
opinion of the court in *Globe Publishing Co. v. State Bank
of Nebraska*, 41 Neb. 175: "We think, therefore, that the

creditors of a *de jure* corporation have no right of action against the stockholders thereof until they have reduced their claims against the corporation to judgment, and until an execution issued upon such judgment has been returned wholly or in part unsatisfied." But it is contended that the constitutional provision above quoted is not applicable to this case for the reason that, the corporation being insolvent and having ceased to exist, the recovery of a judgment against it was neither necessary nor possible. A creditor of an insolvent corporation does not acquire any specific lien on its assets, and no sufficient reason is perceived for holding that he may proceed against one having possession of such assets without first reducing his claim to judgment. The reason for the rule which requires the creditors of an insolvent individual to obtain judgment on their claims before attempting to reach property transferred by him in fraud of their rights seems to be entirely applicable where the debtor is an insolvent corporation against which a suit may be maintained. (*Hollins v. Brierfield Coal & Iron Co.*, 150 U. S. 371.) There was in this case no impediment in the way of a suit against the corporation. Section 68 of chapter 16, Compiled Statutes 1897, provides for the bringing of actions against dissolved corporations and makes ample provision for the service of process upon them. What we conceive to be the correct rule on this subject is stated in 3 Thompson, Private Corporations, section 3355, as follows: "Where the ordinary theory of equitable remedies prevails, under which it is necessary, before resorting to a court of equity, for the complainant to exhaust his remedies in a legal forum, the mere insolvency of the corporation does not dispense with the necessity of a creditor reducing his demand to a judgment at law against it before bringing a suit in equity to charge its shareholders. Nor will it be any excuse for not obtaining such a judgment at law that the charter has expired by limitation, providing the law governing the corporation is such that this fact does not prevent the

obtaining of a judgment at law against it. * * * As has been said in a leading case, a judgment can no more be recovered against a dead corporation than against a dead man. But according to the usual theory, a *de facto* dissolution of a corporation, which consists usually in a permanent suspension of its business and abandonment of its franchises, by reason of insolvency, is no obstruction to obtaining a judgment at law against it, and therefore does not relieve the creditor of the necessity of obtaining such a judgment before applying for equitable relief." A recent case decided on facts almost identical with those in the case before us and fully sustaining Judge Thompson's statement of the rule is *Lamar v. Allison*, 28 S. E. Rep. [Ga.] 686. (See also *Swan Land & Cattle Co. v. Frank*, 39 Fed. Rep. 456.) Our conclusion is that the answer of Smith did not state a cause of action against the stockholders of the Phillips Building & Loan Association, and the entire judgment of the district court is, therefore,

AFFIRMED.