## GREEN v. DANIELS, Sheriff.

### (Circuit Court of Appeals, Eighth Circuit. April 7, 1902.)

### No. 1,628.

EXECUTION—PROPERTY SUBJECT TO SALE—INTEREST IN LAND UNDER COLORADO STATUTE.

    The owner of the title to mining claims made a deed for the same to B., who at the same time made a deed conveying the claims to a company which had contracted for their purchase. Both deeds were placed in escrow, to be delivered to the company in case certain payments were made; otherwise to be delivered to B. The company went into possession under the contract. *Held*, that under Mills' Ann. Codes & St. Colo. § 2582, providing that "every interest in land legal and equitable shall be subject to levy and sale under execution," B. had an interest in the property which was subject to levy and sale, since under the escrow agreement the deed to B. was, in any event, to be delivered and to become effective; making B., in legal effect, a vendor retaining title until payment of the purchase money by the purchaser.

Appeal from the Circuit Court of the United States for the District of Colorado.

Ralph Talbot, John H. Denison, and William H. Wadley, for appellant.

Charles D. Hayt (John W. Wegner and Ernest Knaebel, on the brief), for appellee.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

THAYER, Circuit Judge. This is a bill for specific performance, or, in other words, a bill exhibited by Ernest L. Daniels, sheriff of Lake county, Colo., the appellee, against Harrison S. Green, the appellant, to compel the latter to accept and pay for certain property, known as the "Gordon & Bengal Tiger Lode Claims," situated in mineral survey No. 7,557, Twin Lakes mining district, Lake county, Colo., which property the appellant bought on July 3, 1901, at an execution sale under an execution in favor of one John T. Keegan and against S. P. Brown, Constance H. Brown, George H. Brown, Charles L. Brown, Mamie Niles, Hattie Berry, and Laura Swindler. The execution in question was issued upon a judgment which was recovered against the defendants in the execution on April 2, 1901, for the sum of $27,039.78. The case seems to have been tried below on the bill, answer, and annexed exhibits, no testimony having been adduced by either party; and a decree was rendered in favor of the complainant below. From this source we extract the following facts, which are undisputed: On and prior to April 9, 1900, the property in controversy appears to have been owned by the above-named persons, against whom the execution aforesaid was issued. On that day S. P. Brown entered into a contract for the sale of the property to Daniel E. Murphy, and to a corporation which the latter was to organize, for the price of $200,000, which sum was to be paid in a manner therein specified. In pursuance of this agreement, and for the purpose of carrying it into effect, S. P. Brown, Constance H. Brown, George H. Brown, Charles L. Brown, Mamie Niles, Hattie

Berry, and Laura B. Swindler executed a deed conveying the property to Daniel E. Murphy; said conveyance being duly recorded. At the same time Murphy executed a deed conveying the property to Constance H. Brown, and she, in turn, executed a deed conveying it to the Gordon Tiger Mining & Reduction Company, which was the corporation that Murphy had organized to succeed to his rights, and acquire and work the property. The two deeds last mentioned (that is to say, the deed from Murphy to Constance H. Brown, and her deed to the mining company) were delivered in escrow at the date of their execution to John H. Denison, to be delivered to the aforesaid mining company when it had paid for the property in accordance with the agreement of date April 9, 1900, above mentioned, and had produced receipts, signed by S. P. Brown or Constance H. Brown, showing that the property had been paid for. The directions contained in the written instrument by virtue of which said deeds were placed in escrow were that if the mining company should be in default over 90 days in making payment of the purchase price of the mine in the manner agreed, or in the payment of one-half of the net profits of the mine, to S. P. Brown, which portion of the profits it had agreed to pay to him until the purchase price of the mine was fully liquidated, then the deeds held in escrow were to be delivered to Constance H. Brown, or to her order. By the terms of the agreement of date April 9, 1900, the mining company had the right to relinquish all its interest in the property, and to surrender its claims to the deeds held in escrow, without liability for damages, if it should determine at any time that it could not work the property profitably. It seems that at the time the judgment aforesaid was rendered against the above-named defendants in the execution, under which the appellant became the purchaser of the property, the mining company was still in possession of the property, and had made some payments on account of the purchase price, and had not at that time elected to surrender its rights as a purchaser.

Counsel for the appellant, at the commencement of their argument, say that:

"The only question presented is, was the interest of the Browns, as shown in defendant's answer and the exhibits thereto attached, subject to levy by execution? If the land was not subject to sale, the levy and sale are void, and the purchaser is not bound."

We accept that as a correct statement of the point to be determined, and shall confine our attention thereto; assuming, as we do, that it was the only question considered by the circuit court.

A statute of Colorado (Mill's Ann. Codes & St. § 2582) provides that:

"Every interest in land, legal and equitable, shall be subject to levy and sale under execution; and the claim or possessory right of any defendant in execution, in or to any public lands, may be levied upon and sold under execution, in the same manner as if the same were held by such defendant in fee simple."

See, also, Barnes v. Beighly, 9 Colo. 475, 479, 12 Pac. 906.

It follows, therefore, that if any of the defendants in the execution had an interest in the land, legal or equitable, the execution was

properly levied, and a sale thereunder passed that interest. Looking at the situation as disclosed by the record, we are of opinion that Constance H. Brown, one of the defendants in the execution, had a vendible interest in the property, under the provisions of the aforesaid statute. It will be observed that all of the defendants in the execution joined in the conveyance of the property to Murphy, which conveyance was delivered and recorded. Murphy then conveyed the property, by a deed duly acknowledged, to Constance H. Brown, and she, in turn, conveyed the property to the mining company; but these latter deeds are held in escrow. In no event, however, can the title or interest which was conveyed by Murphy to Constance H. Brown ever become revested in him (Murphy), since, if the mining company fails to complete its purchase, the deeds held in escrow are not to be delivered to him, but to Constance H. Brown, when she will become vested with the entire estate. While it is a general rule of law that deeds delivered in escrow only take effect as of the date of the second delivery,—that is to say, when the condition on which they are to be delivered has been fulfilled (Bish. Cont. §§ 357-361),—yet there are well-known exceptions to this rule, to which the case at bar belongs, since Murphy, when he executed his deed in favor of Constance H. Brown, and placed it in escrow, did not expect to regain the title, even if the mining company did not pay the purchase price, but intended to vest the title in her, to the end that she might be in a situation, by a mere delivery of her deed to the mining company, to vest it with the legal title, provided it paid the purchase money. Her situation, therefore, when the levy was made, is entirely analogous to that of a vendor who has sold land, and placed the vendee in possession, retaining the title to be transferred when the purchase money is paid. The statute which was originally adopted in the state of Colorado, defining what shall be included by the term "real estate," as used in the section authorizing the sale of such property on execution, was borrowed from the state of Illinois; and the original statute is not substantially different from the statute which is now in force in the state of Colorado, except that the latter statute is, if anything, more comprehensive, in that it authorizes the sale of all interests in land, whether they be legal or equitable. In the state of Illinois it is the rule that a vendor of real property, who has sold land and put his vendee in possession, but has not executed a conveyance, has an interest in the land, which, under the statute of that state, may be sold under execution. McLaurie v. Barnes, 72 Ill. 73, 75, 76. There is no decision to the contrary in Colorado, as the only case from that state to which our attention has been directed that is at all in point is the case of Fallon v. Worthington, 13 Colo. 559, 22 Pac. 960, 6 L. R. A. 708, 16 Am. St. Rep. 231, where an attempt was made to sell a vendor's interest in real property, who had sold and conveyed the same, but had not received all of the purchase money, and who, for that reason, could only claim a vendor's lien, which was held not to be an interest in land. The situation of a vendor who has not made a conveyance of the thing sold is, as a matter of course, very different. So long as he retains the legal title, he has an interest in the res, and this interest must

be held to be vendible, under the Colorado statute above quoted. One who purchases at a sale of the vendor's interest takes, of course, subject to all the rights of the vendee of which he has notice; but, on the other hand, he succeeds to all the interest of the vendor, including his rights as against the vendee.

We conclude, therefore, that Constance H. Brown did have an interest in the property which was vendible on execution; and as this is the only question argued, and as it was rightly decided below, the decree below is affirmed.