REID, Respondent, v. GORMAN, et al, Defendant
(Gorman, Appellant.)

(158 N. W. 780)

(File No. 3820.   Opinion filed June 27, 1916.   Rehearing denied August 31, 1916.) .

1.   Lis Pendens—Rescission of Land Contract—Redemptioner from Foreclosure Against Vendor, Effect of Lis Pendens Upon.

Where a vendee under a land sale contract sued for rescission of the contract, and filed a notice of lis pendens, in which suit the trial court, in determining the rights of the parties under the sale contract, adjudged that plaintiff vendee had been the "owner" of the land since the date of the sale contract, and also decreed a foreclosure sale against the land, prayed for by defendant vendor in said suit, held, that, as against a judgment

creditor of the vendor, who, through attachment in his suit, held a judgment lien upon the land, and was seeking to redeem from the foreclosure sale, such lis pendens was not notice to and did not bind said redemptioner wherein the judgment in the rescission suit decreed plaintiff vendee to be the owner of the land, if such judgment, in so decreeing, went further than the facts pleaded and the relief demanded warranted.

2. **Real Property—Vendee Under Sale Contract, Seeking Rescission —Tender of Deed by Vendee—Title, Delivery of Deed, Necessity—"Equitable Title," Misnomer, When.**

Where, under a land sale contract, the vendee brought suit against vendor to rescind the contract, and vendor had before suit tendered to vendee a warranty deed to the land, and after the tender and a refusal thereof, deposited the deed with the depositary agreed upon by the parties, **held**, that before title to land can pass through a deed, the deed must be delivered and delivery accepted by the grantee; hence the legal title to said land was in the vendor. **Held**, further, that the tender not having been accepted, the rights of the parties in and to the land under the contract were unaltered by such tender. **Held**, further, that the vendee, immediately upon entering into the sale contract, became possessed of an equitable interest or estate in the land, and the vendor, while continuing to be vested with the legal title thereto, held it in trust for vendee's benefit, and under an obligation to transfer title to vendee whenever the latter should have acquired the right to be vested therewith; but vendor also held such legal title as security for payment of the balance remaining unpaid under the sale contract; that the interest of vendee was not, strictly speaking, an "equitable title," a vendee's interest in land constituting an equitable title only where there is a present right in him to be vested with the legal title by fulfillment of the contract on his part to the extent of being entitled to specific performance.

3. **Attachment—Attachment Lien on Vendor's Interest in Realty— Tender of Vendor's Deed, Refusal of, Effect—Statutory Authority for Attachment, Necessity.**

Where an attachment creditor under a judgment against a vendor of land sought to redeem from a sale certificate on foreclosure of a mortgage executed by vendor upon the land, and vendor had tendered to vendee a warranty deed of the land, which tender had been refused, the deed having been deposited with the depositary agreed upon by vendor and vendee, **held**, that the interest and estate of the vendor in the land was subject to the lien of the judgment in the attachment suit; it appearing that at the time of the levy of the attachment the vendee had abandoned the land and was denying validity of the sale contract. **Held**, further, that such equitable

estate in the vendor under an executory contract, is not subject
to levy under attachment, in absence of some statute authoriz-
ing same.

McCoy, J., and Smith, J., dissenting.

Appeal from Circuit Court, Hamlin County. HON. CARL G.
SHERWOOD, Judge.

Action by Frank J. Reid, against J. K. Gorman, E. J. Dunn,
as sheriff in and for Hamlin County, South Dakota, W. S.
Madden and others, to quiet title to realty, and seeking a decree
requiring the defendant sheriff to issue to him a sheriff's deed
upon foreclosure; defendant Gorman claiming an interest in the
land as redemptioner under the foreclosure sale. From an order
overruling defendant Gorman's demurrer to the plaintiff's reply,
said defendant appeals. Reversed.

*M. J. Russell*, and *George H. Marquis*, for appellant.

*Hall, Alexander & Purdy*, and *W. N. Skinner*, for Respon-
dent.

(1) To point one of the opinion, Appellant cited: "Lis
Pendens" Cent. Digest Sec. 53; Dec. Digest Sec. 25 (6); Roose-
velt v. Land & River Co. et al (Wis.) 84 N. W. 157; Sprague v.
White (Iowa), 35 N. W. 751.

Respondent cited: Steele v. Taylor, 1 Minn, 275 (Gil. 210);
Hall Lumber Co. v. Gustin (Mich.) 20 N. W. 616.

(2) To point two of the opinion, Appellant cited: 13 Cyc.
570.

Respondent cited: State v. Weide, 135 N. W. 696; Pomeroy's
Eq. Jus. Secs. 367, 368; Phillis v. Gross, 32 S. D. 438, 143 N.
W. 373; Hickman v. Long, 150 N. W. 298.

(3) To point three of the opinion, Appellant cited: Code
Civ. Proc. Sec. 646; Laws 1913, Ch. 273; Art. 5, Ch. 13, Code
Civ. Proc.; North Dakota Horse & Cattle Co. v. Serumgard (N.
D.) 117 N. W. 453; Cummings v. Duncan, (N. D.) 134 N. W.
712-714; Walklin v. Horswill, (S. D.) 123 N. W. 668; Newell
v. Wagness, 1 N. D. 62, 44 N. W. 1014; May v. Emerson, 96
Pacific 454-1065; Schmidt v. Musson et al, 20 S. D. 389; 107
N. W. 367; Words and Phrases, Vol. 4, page 3846, and Vol. 3,
"Second Series," page 132.

Respondent cited: Roblin v. Palmer, 67 N. W. 949 (S. D.);
Code Civ. Proc., Secs. 646, 321, 334, 373, 384; Clapp v. Tower,

93 N. W. 862; Woodward v. McCollum, 111 N. W. 623; Salzer Lumber Co. v. Claflin, 113 N. W. 1036; Mueller v. Flavin, 13 S. D. 597; Brooke v. Eastman, 17 S. D. 340; Foorman v. Wallace, 17 Pac. 680 (Cal.); North Dakota Horse & Cattle Co., v. Scrumgard, 117 N. W. 453.

WHITING, J.    Plaintiff, the assignee of a certificate of sale upon foreclosure of real estate mortgage, brought this action seeking a decree requiring the defendant Dunn, as sheriff, to issue to him a sheriff's deed on such foreclosure, and seeking to quiet his title to the land described in his certificate as against the claims of any of the defendants and especially against those of the defendant Gorman.    Gorman claims an interest in and to said land as a redemptioner from the above-mentioned foreclosure sale; he claims that, as an attachment lienor claiming to hold an attachment lien upon said land, he tendered to the plaintiff the amount necessary to redeem from the foreclosure sale and, after the refusal of plaintiff to accept the same, did, within the period provided by law for redemption, pay the amount necessary for such redemption to the defendant Dunn as sheriff.    This appeal is from an order of the circuit court overruling Gorman's demurrer to the plaintiff's reply.

The facts as presented by the demurrer are in brief as follows: One M., being the owner of the land in question subject to the mortgage upon which the above-mentioned foreclosure was afterwards made, entered into an executory contract with one L., whereby M. contracted to sell the said land to L. subject to the said mortgage, and to convey the same by warranty deed upon payment of the agreed consideration, a part of which consideration was paid upon the execution and delivery of such contract; the balance to be thereafter paid.    L. entered upon said land, but afterwards abandoned it, and without making any further payments, brought an action against M. for the rescission of the contract.    At the time of instituting such action, L. filed in the proper office a notice of lis pendens.    M., answering L.'s complaint and by way of counterclaim, alleged the full performance by him of the covenants of said contract, among other things alleging that under date of said contract he had made a warranty deed conveying said land to L., and that,

subsequent to the commencement of that action, he had tendered the said deed to L., and, after such tender and refusal, had deposited it in a depository theretofore agreed upon by the parties. M. prayed a money judgment for the balance due him under such contract and for a foreclosure sale of the said land to pay such judgment. In such action, a judgment was rendered wherein it was found that L. had been the "owner" of the said land ever since the date of the contract and wherein a foreclosure sale was decreed. Besides confessing the action between L. and M., the facts therein pleaded, and the judgment therein rendered, the demurrer confesses the existence of the facts pleaded in the action of L. against M.; such facts being separately pleaded. After the commencement of the action of L. against M. and the filing of the notice of lis pendens therein and the interposing of M.'s counterclaim but before judgment therein, Gorman brought an action against M. and another, wherein a money judgment was demanded and wherein an attachment was issued on behalf of Gorman and levied upon the land involved herein. In that action Gorman obtained a judgment against the defendants therein. The mortgage above mentioned not having been paid, it was foreclosed, and, upon the foreclosure sale, plaintiff's assignor became the purchaser; and thereafter, as above noted, Gorman, claiming to be a redemptioner under and by virtue of his attachment lien, made the offer of redemption to plaintiff and the payment to the sheriff.

[1] Respondent contends that the appellant was bound by the notice of lis pendens, and that by reason thereof he is bound by the decree in the action of L. against M. the same as though he had been a party thereto. If this were true and we should give to the word "owner" as used in such decree its common acceptation, such decree would be an adjudication, binding upon appellant, adjudging that M. had, at the time of the levy of appellant's attachment, no interest in said land subject to attachment. Inasmuch as the facts pleaded in this action—in so far as they relate to the rights of L. and M. under the contract between them—are the same as the facts that were pleaded in the counterclaim of M. in the action of L. against M., the bringing of such action of L. against M., the filing of the notice of lis pendens, and the entry of judgment therein, became of little

moment because the judgment therein could not and did not deprive appellant of any rights which he otherwise would have had against this land. It is not necessary for us to determine whether or not the judgment rendered in the action of L. against M. was warranted by the facts pleaded. The relief demanded in such action was only such relief as the defendant therein was entitled to under the facts alleged in his counterclaim. It follows that, if such judgment—in decreeing that L. became the "owner" of the land on the day the contract was entered into—went further than the facts pleaded and the relief demanded warranted, the judgment to such extent was invalid as against appellant, and he could not be bound thereby even though a notice of lis pendens was filed. Section 634, Pomeroy's Eq. Juris.; 25 Cyc. § 1476. We may therefore entirely disregard the fact that there ever was an action between L. and M., and consider only the question of whether or not, under the facts confessed, M., at the time of the levy of the attachment, had an interest in said land that could be and was reached through the attachment levy. If he had then appellant through such levy became a redemptioner entitled to redeem such land from the foreclosure sale.

[2] If the deed made by M. and tendered to and refused by L. had the effect of transferring to L. the legal title to this land, there was left in M. nothing but a personal claim against L. which could not in any manner be reached through this attachment levy. But it is certainly recognized by all authorities that, before title can pass through a deed, there must be a delivery of such deed, and that an essential element in delivery is the acceptance of the deed by or on behalf of the grantee. Devlin, § 285; 3 Washburn, Real Property (5th Ed.) 310. It is therefore clear that the legal title to this land was held by M. at the time of the levy of appellant's attachment.

Inasmuch as the deed tendered by M. was not accepted, the relations of M. to L.—the rights and obligations of each of them under the contract—were in no manner altered by such tender, except that it had the effect of putting L. in default. Such tender of deed in no manner changed M.'s rights or his interest in and to the said land. What the rights of M. and L. were under the contract is well settled under all the authorities. It certainly has become settled in this state under the line of decisions ending with

that in the case of Phillis v. Gross, 32 S. D. 438, 143 N. W. 373. Immediately upon entering into such contract, L. became possessed of an equitable interest or estate in said land. M., while continuing to be vested with the legal title of said land, held such title in trust for the benefit of L. and under an obligation to transfer the same to L. whenever L. should have acquired the right to be vested with such title; but M. also held such legal title as security for the payment to him of the balance remaining unpaid under such contract. As stated by Pomeroy, at section 1260 of his Equity Jurisprudence:

"Although possession may have been delivered to the vendee, and although under the doctrine of conversion the vendee may have acquired an equitable estate, yet the vendor retains the legal title, and the vendee cannot prejudice that legal title or do anything by which it shall be divested, except by performing the very obligation on his part which the retention of such title was intended to secure—namely, by paying the price according to the terms of the contract. To call this complete legal title a lien is certainly a misnomer. In case of a conveyance, the grantor has a lien, but no title. In case of a contract for sale before conveyance, the vendor has the legal title, and has no need of any lien; his title is a more efficient security since the vendee cannot defeat it by any act or transfer even to or with a bona fide purchaser."

This interest which L. had in said land, by virtue of such contract, is sometimes spoken of as an equitable title. We think this term inaccurate, and that there never can, strictly speaking, be any "equitable title" except where there is a present right in the person to be vested with the "legal title"; in other words, there can be no equitable title until, by fulfillment of the covenants of the contract, the vendee has become equitably entitled to the legal title, has become entitled to a decree of specific performance. As stated by Warvelle, at section 176:

"The essential feature of an equitable title is that it is one which appeals to equity for confirmation and enforcement. Hence a mere contract or covenant to convey at a future time on the purchaser performing certain acts does not create an equitable title. It is only when the purchaser performs or tenders performance of all the acts necessary to entitle him to a deed that

he has an equitable title and may compel a conveyance. Prior thereto he has, at best, only a contract for the land when he shall have performed his part of the agreement."

[3] However, it makes very little difference whether we speak of this interest held by the vendee as an equitable estate or an equitable title. The interest of the vendee remains the same whatever name be given it, and the vendor still remains the holder of the legal title to secure his rights under the contract. Is this interest of the vendor an interest subject to the lien of a judgment, and therefore subject to levy and sale under attachment and execution? As stated by the author of the notes found in 57 L. R. A. pp. 643-654:

"It will be seen that the decisions involving the lien of a judgment against the vendor are not in harmony, but it will also be noticed that the conflict is not caused by any differences of judicial opinion as to the soundness of the doctrine that the vendee takes an equitable title to the property. They are all in accord as to the nature of the title and interests of the respective parties. The only point of difference between them is as to whether the substantial interest which remains in the vendor, and for the payment of which he holds the legal title as security, is subject to the lien of a judgment."

We believe that, under the overwhelming weight of authority, such interest is subject to the lien of a judgment and can be reached through an attachment of the land. Of the cases recognizing this rule, we cite a few: Dalrymple v. Security L. & T. Co., 11 N. D. 65, 88 N. W. 1033; Doak v. Runyan, 33 Mich. 75; Moyer v. Hinman, 13 N. Y. 180; Marston v. Osgood, 69 N. H. 96, 38 Atl. 378; Holman v. Creagmiles, 14 Ind. 177; Lefferson v. Dallas, 20 Ohio St. 69; Stewart v. Coder, 11 Pa. 90; Hardee v. McMichael, 68 Ga. 678; Coolbough v. Roemer, 30 Minn. 424, 15 N. W. 869; Filley v. Duncan, 1 Neb. 134, 93 Am. Dec. 337, and notes page 353; McMullen v. Wenner, 16 Serg. & R. (Pa.) 18, 16 Am. Dec. 543; note to Keirsted v. Avery, 4 Paige, (N. Y.) 9; Kinports v. Boynton, 120 Pa. 306, 14 Atl. 135, 6 Am. St. Rep. 706; Wehn v. Fall, 55 Neb. 547, 76 N. W. 13, 70 Am. St.Rep. 397; Snyder v. Martin, 17 W. Va. 276, 41 Am. Rep. 670; Hope

v. Blair, 105 Mo. 85, 16 S. W. 595, 24 Am. St. Rep. 366; Mc-Laurie v. Barnes, 72 Ill. 73; Green v. Daniels, 53 C. C. A. 379, 115 Fed. 449; 39 Cyc. 1657, 1658; 17 Am. & Eng. Ency. Law (2d Ed.) 780; Black on Judgments, § 438; Freeman on Judgments, § 363. At section 364, Freeman on Judgments (4th Ed.), the learned author makes statement that:

"It is everywhere conceded that a judgment lien accruing against a vendor after the making of the contract of sale extends to all his interest remaining in the land, and entitles the purchaser at the sale to all sums still to be paid by vendee."

Later, in section 181, Freeman on Executions (3d Ed.), this same author recognizes that the rule is different in four states; but he says:

"We are, however, entirely unable to understand how the interest of a vendor, while he retains the legal title, and has the right to continue to retain it, because the contract of purchase has not been performed, can be held not subject to execution to the extent of transferring by an execution sale the precise interest held by the vendor."

In those states where there are decisions not in harmony with the majority rule, it will be found that generally there was involved the conflicting claims of a vendee in possession and the party claiming under execution or attachment sale against vendor. Such cases will be found to turn upon the fact that possession was taken and retained by the vendee. We do not believe a single authority could be found holding the vendor's interest not subject to be reached by a levy on the land, where, as in this case, at the time of levy the vendee had abandoned the land and was denying the validity of the contract. Under such facts, there is left no one with any right or interest, legal or equitable, that can authorize him to question a creditor's right to proceed against the land.

It is an established rule of law that an equitable estate in lands, such as that of a vendee under an executory contract, is not subject to the lien of a judgment or to levy under attachment or execution in the absence of some statute authorizing same. It would follow that, if the interest of the vendor was not subject to lien of judgment, all that would be necessary in order to put land where it would be free from judgment liens would

be for the owner to enter into an executory contract for its sale.

Inasmuch as plaintiff is seeking relief in equity, it might not be improper to note the results that would flow under each contention urged before us. The land in question is alleged to be worth $6,500. This allegation is undisputed. The foreclosures sale was for $3,485. That amount with interest measures plaintiff's equitable rights. This amount, to-wit, $3,724.89, was tendered him and has been paid to the sheriff as redemption money. Under no principle of justice is he entitled to another cent. This leaves an equity of nearly $3,000 belonging to M. Justice and equity demand that M. get the benefit thereof. This he would get through the application of same to the payment of Gorman's claim. Gorman's claim is in exceess of this equity, and M. is insolvent; therefore Gorman is equitably entitled to relief. The law gives a clear method of enforcing justice among these parties. Gorman has followed this method and is entitled to have the same approved and his rights enforced.

The order appealed from is reversed.

McCOY, J. (dissenting.)   This action was commenced on the 25th day of March, 1914, to determine adverse title and equitable interests in and to the southeast quarter of section 6, township 114, range 52, in Hamlin county; the plaintiff claiming to be the owner thereof under and by virtue of a mortgage foreclosure sale. The defendant Gorman interposed a counterclaim claiming to be entitled to said land as owner thereof by virtue of an attachment levy and judgment and redemption thereunder from the mortgage sale under which plaintiff claims. Plaintiff by reply and as a defense to this counterclaim alleged matter tending to show that defendant Gorman is estopped and legally precluded from claiming any interest in said lana under his attachment levy and judgment. Defendant Gorman interposed a general demurrer to this portion of the reply on the ground that the same did not constitute a defense to said counterclaim. From an order overruling such demurrer, defendant Gorman appeals.

The facts disclosed by said pleadings material to a disposition of the question here presented, and which, for convenience, we classify under three divisions, are substantial these: (1) On the 2d day of July, 1909, one W. S. Madden, who was then the fee-simple owner of said southeast quarter of section 6, as a mort-

gagor, executed and delivered to one Gould a real estate mort-
gage upon said land to secure the payment of $3,000 and interest.
Default having been made in the payment of said sums so secured
by said mortgage the said mortgagee foreclosed the same, by
advertisement, and on the 1st day of February, 1913, at fore-
closure sale the said land was sold to one Skinner, and a
certificate of sale issued to said purchaser. On March 27, 1913,
Skinner assigned said certificate to plaintiff, which assignment of
certificate was filed for record on January 21, 1914. That after
the expiration of one year from the date of said foreclosure sale
the plaintiff demanded of the sheriff of said county a sheriff's
deed on such foreclosure, which was refused by said sheriff on
the ground that on the 24th day of January, 1914, the defendant
Gorman had redeemed from such foreclosure sale by the payment to
said sheriff all such sums as were required by law to make such
redemption. (2) On the 7th day of September, 1909, the said
Madden, still being the fee-simple owner of said land, entered into
a contract with one Lenth, whereby Madden agreed to sell and
convey, and Lenth agreed to purchase, said land for the considera-
tion of $8,320, the said Lenth agreeing to assume the paymrnt of
the Gould mortgage, to pay $2,070 on delivery of the contract, and
$3,250 on the 1st day of March, 1910. On the 9th day of Septem-
ber, 1909, Madden executed a warranty deed to said Lenth, as
grantee, and delivered the same to the Monona State bank of
Monona, Iowa, as a depository appointed by said Lenth to receive
the same. Lenth paid the said $2,070, and took possession of
the land, but made default in the payment due March 1, 1910,
and thereafter in July, 1910, served notice of rescission of said
contract. Also in July, 1910, Lenth, as plaintiff, commenced an
action against Madden, as defendant, to rescind and cancel said
contract on the ground of alleged fraudulent representations.
Madden answered in said action, denied the alleged fraudulent
representations, interposed a counterclaim for specific performance
of the contract, tendering to Lenth the deed theretofore delivered
to the Monona State Bank, and demanded recovery from Lenth
of the balance due on said contract as purchase money and that
his lien for such purchase money be foreclosed and said land
sold to satisfy the same. Notice of the pendency of this action
was filed : the time of the commencement thereof. Thereafter,

in February, 1914, on the trial of said action the court found, and on March 5, 1914, adjudged that Lenth, as such plaintiff, take nothing by his suit, and that Madden, as such defendant, have and recover from Lenth the sum of $4,456.05 for the amount remaining unpaid on said purchase price; that said Lenth is the owner of said land and has been such owner since September 7, 1909, subject to the lien of said Gould mortgage, and also subject to the lien of Madden for the unpaid purchase money. (3) On January 25, 1912, the defendant in this case, Gorman, as plaintiff in the case of Gorman v. Madden et al., another action which had been then pending for some years, attached and levied on the land in question as the property of the defendant Madden in that action, and on the 7th day of November, 1912, judgment in favor of plaintiff in the said action of Gorman v. Madden et al. was docketed in Hamlin county against Madden. On the 24th day of January, 1914, Gorman, as the owner of said judgment against Madden, claiming the right as a judgment creditor of Madden with a lien on said land, sought to redeem from the foreclosure sale made under the Gould mortgage.

The matter contained in plaintiff's reply to which the demurrer was interposed alleged the facts in relation to the contract of sale of said land by Madden to Lenth and the suit of Lenth v. Madden and the judgment rendered therein. It is the contention of respondent that Gorman, neither under the attachment levy nor under the judgment, as plaintiff in the suit of Gorman v. Madden et al., obtained and acquired a lien upon or against the land in question, and by reason thereof had no legal right to make redemption under the Gould foreclosure; that notice of the pendency of the suit of Lenth v. Madden having been filed and being of record long prior to such attachment levy and judgment in the Gorman v. Madden suit, and the judgment in the Lenth suit having adjudicated that Lenth became the owner of said real estate in September, 1909, and that Madden had no interest in said land in 1912 that was subject to levy under attachment or subject to the lien of the judgment for plaintiff in the Gorman v. Madden case, the defendant Gorman in this case became concluded and bound by the judgment in the Lenth case. I am of the opinion that the demurrer to plaintiff's reply was properly overruled. It is a well-established rule

in this state that an unrecorded warranty deed will take precedence over a subsequent attachment or judgment lien upon the property conveyed by such unrecorded deed; that such attachment creditor is not considered as an innocent purchaser or incumbrancer under the recordation statutes of this state. Such attachment and judgment lien could only attach and become operative on whatever title and interest the attachment or judgment lien debtor had, if any, in the land at the date of the attachment levy and docketing of the judgment. Roblin v. Palmer 9 S. D. 36, 67 N. W. 949; Bateman v. Backus, 4 Dak. 433, 34 N. W. 66, 68; Kohn v. Lapham, 13 S. D. 78, 82 N. W. 408; Murphy v. Plankinton Bank, 13 S. D. 501, 83 N. W. 575; Haynie v. Bennett, 22 S. D. 65, 115 N. W. 515; Bliss v. Tidrick, 25 S. D. 533, 127 N. W. 852, 32 L. R. A. (N. S.) 854, Ann. Cas. 1912C, 671. The effect of the judgment in the Lenth case was that Madden had no interest or title in the land at the time of the attachment levy and docketing of the judgment in the Gorman v. Madden suit. The only interest Madden had in the land, in question in 1912 was his chose in action, namely, his debt against Lenth for the balance of the purchase money and a right to a purchase money lien on the land. This chose in action was not levied upon under the Gorman attachment, and the Gorman judgment against Madden did not become a lien upon this chose in action in Madden's favor growing out of the Lenth contract.

The crucial question in this case is whether Madden had parted with his title before the 25th day of January, 1912, at the time the Gorman attachment was levied on the land. It seems to me that the majority opinion wholly loses sight of the fundamental foundation principle that is involved in the performance of such transactions and contracts relating to the sale of property. It will be observed that the contract between Lenth and Madden was not a unilateral option contract containing specific precedent conditions, and time being of the essence thereof, and where title could not pass until the performance of such precedent conditions, but it was a plain unconditional sale for so much money agreed to be paid in a certain manner on a certain date. Much that was said in State v. Weide, 29 S. D. 109, 135 N. W. 696, directly applies to this case as to the effect of such contracts. The kind of contract here involved is considered

in 1 Warvelle on Vendors, § 174, and 6 Pom. Eq. Jr. p. 1273. The fundamental principle to which I refer is that "equity regards that as done which ought to have been done." All throughout the general law of sales of both real and personal property, where the question of acceptance and delivery is involved, where a purchaser·has agreed to accept a thing, and the seller performs on his part, and places the buyer in a position where he ought, under his contract, to accept and receive delivery, but wrongfully does not, equity says that such buyer will be regarded as having accepted as of the time when he should have done so. It is quite evident that the learned trial court applied this principle of equity law in the Lenth v. Madden case. Facts were alleged in the pleadings of that case fully warranting the judgment rendered. Gorman had notice of the pendency of that action and of all the issuable facts appearing in such pleadings, and all of which occurred long prior to January 25, 1912. Madden had, long prior to January, 1912, placed Lenth in a position where ·he ought to have accepted the delivery of the deed; the said deed being then in the possession of a depositary and agent selected by Lenth. Madden had performed and done all within his power, all that was required of him under the contract, and all that remained under the contract was for Lenth to pay the balance of the purchase money. Madden had executed a deed and placed it where Lenth should have accepted it. Under these circumstances, equity says Lenth will be regarded as having accepted delivery of the deed when he ought to have done so. That placed the title fully and completely in Lenth as of the date when Lenth should have accepted. From thence afterwards Lenth was indebted to Madden for the purchase price remaining unpaid with a purchase money lien on the land of Lenth. From thence thereafter Madden had no title. At that instant Madden, having fully performed on his part, was entitled to full and complete specific performance from Lenth. Madden by the full and complete performance of the contract of sale on his part, and by the tendor of his deed which ought to have been accepted by Lenth, fully invested Lenth with title. If Madden had no title in 1912, there was nothing for the attachment levy on the land to take effect upon. The matter of passing title under the contract of sale was a matter purely and solely between Lenth and Madden, in which

Gorman was not concerned or had no interest. If title passed between the said parties to the sale contract in 1910, Gorman became bound thereby. The trial court by its decree did not create any new situation of affairs, but only declared the effect of what had taken place in 1910, prior to the beginning of that action. The judgment in Lenth v. Madden was based upon the legal and equitable status of the contract and transaction at the commencement of that action. It decreed what had taken place some two years prior to the attachment, and of which Gorman had notice. The pleadings in that case told him what the facts were; he was presumed to know the result applicable to such facts.

Again, Madden could not foreclose a purchase-money lien against his own land, and against land in which he himself held title, but it was because title was in Lenth that the court could decree a foreclosure of the purchase-money lien. This, also, appeared from the pleadings in the Lenth case. Gorman should have levied upon the chose in action belonging to Madden, instead of making a levy on the land itself.

The judgment appealed from should be affirmed.

SMITH, J., concurs.