State of South Dakota, ex rel. DEPARTMENT OF REVENUE, Plaintiff and Appellant,

v.

Christos KARRAS, a/k/a Chris Karras and Chris D. Karras, Dion Karras, and Donald G. Karras, Defendants and Appellants,

and

Lincoln County, a Municipal subdivision of the State of South Dakota, Defendant.

Nos. 18306, 18373.

Supreme Court of South Dakota.

Argued Jan. 10, 1994.

Decided April 27, 1994.

Donald N. Srstka, Sp. Asst. Atty. Gen., Sioux Falls, for plaintiff and appellant.

Steven M. Johnson and Kevin L. Reiner of Johnson, Heidepriem, Miner & Marlow, Yankton, for defendants and appellants.

SABERS, Justice.

Trial court held that certain real estate was conveyed to wife of delinquent taxpayer free of sales tax lien. We reverse.

## FACTS

In the late 1970s and early 1980s, Christos Karras (Karras) owned, and, with his wife and family, operated the Time–Out Steakhouse and Restaurant (Time–Out) in Sioux Falls, South Dakota. In February, 1983, the South Dakota Department of Revenue (De-

partment) conducted an audit of the Time–Out. Karras was informed of the results of the audit June 24, 1986 when he received a jeopardy assessment from Department for sales taxes relating to 1980, 1981, and 1982 in the amount of $103,324. Department filed a tax lien on July 23, 1986.

Karras had entered into a contract for deed on August 31, 1979 with Harold and Frances Jacobson (Jacobson) to purchase approximately 76 acres of undeveloped farmland in Lincoln County.[1] Jacobson agreed to convey a warranty deed to Karras upon payment of $160,000.00.

On December 27, 1979, Karras purchased on contract for deed an additional 17 acres of undeveloped farmland in Lincoln County from Jacobson. Jacobson agreed to convey a warranty deed to Karras upon payment of $37,500.00. On January 6, 1984, Karras paid Jacobson $16,170.00 and received a warranty deed to the 17 acre tract.

Karras deeded both the 71 acre tract and the 17 acre tract to his wife, Dion Karras (Dion), on July 5, 1985. The deed was recorded that day in Minnehaha County, but was not recorded in Lincoln County until July 28, 1986. Department filed a tax lien against the Lincoln County real estate in Lincoln County on July 23, 1986. Dion received a warranty deed to the 71 acres on November 14, 1986 and deeded both tracts to her son, Donald Karras (Donald) on April 10, 1987.

Department commenced an action on June 20, 1991, against Karras, Dion, and Donald to foreclose and to quiet title in the property. The trial court held that Department's fraudulent conveyance action with regard to the conveyance from Karras to Dion was barred by the four-year statute of limitations found in SDCL 54–8A–9 and that such statute of limitations was not tolled by the filing of the administrative appeal. The trial court further found that Dion had taken title to the 71 acre tract as a gift without notice of a tax lien and later paid good and valuable consideration for the transfer. The trial court also

1. This tract included additional parcels which were sold and are not contested in this matter. This tract will be referred to as the 71 acre tract.

found, however, that Dion did not pay good and valuable consideration for the 17 acre tract. Department appeals. Karras cross-appeals as to the 17 acre tract.

1. **Whether Dion qualifies as a purchaser for value without notice of Department's sales tax lien that had attached to the two tracts.**

A sales tax lien attaches to the property of the taxpayer at the time the tax is due and delinquent and becomes perfected when Department records the lien with the register of deeds in the county where the taxpayer's property is located. SDCL 10–59–11.[2] If the lien is not recorded, a subsequent mortgagee, *purchaser* or judgment creditor *that has given value and does not have actual notice of the lien* has priority over the sales tax lien. *Id.* (emphasis added).[3]

The trial court concluded that while the July 5 deed to Dion was a gift, the transfer of the 71 acres was for value and without notice. The trial court further found that, although Karras and Dion had knowledge of the sales tax audit, knowledge of an audit does not constitute knowledge and notice of a tax lien and, since notice was not given by Department nor was a tax lien filed until after the transfer on July 5, 1985, neither Karras nor Dion had notice of Department's sales tax lien which had attached to the property prior to the transfer.[4] Therefore, the trial court held that because Department did not file until after Dion's purchase, Department's lien was not preserved against Dion as a subsequent purchaser for value and without notice.

2. SDCL 10–59–11 provides:

Any tax, penalty or interest due from a taxpayer is a lien in favor of the state upon all property and rights to property whether real or personal belonging to the taxpayer. In order to preserve the lien against subsequent mortgages, purchaser or judgment creditors for value and without actual notice of the lien on any property situated in a county, the secretary may file with the register of deeds of the county a notice of the tax lien in such form as he determines. The priority of the lien shall be determined as of the date the notice of tax lien is received and indexed by the register of deeds. The notice of tax lien shall create a lien in each county where the notice of tax lien is recorded.

*Notice*

SDCL 10–59–11 protects subsequent purchasers for value and without actual notice of the lien. However, as this court explained in *Betts v. Letcher*, 1 S.D. 182, 46 N.W. 193 (1890):

The protection which the registry law gives to those taking titles or security upon land upon the faith of the records should not be destroyed or lost except upon clear evidence showing a want of good faith in the party claiming this protection, and a clear equity in him who seeks to establish a right in hostility to such person. Slight circumstances, or mere conjectures, should not suffice to overthrow the title of one whose title is first on record. Our statute, however, says an unrecorded instrument is valid as between the parties thereto, and those who have notice thereof. ... Our Civil Code makes void a conveyance not recorded only as against a subsequent purchaser of the same property, or any part thereof, in good faith, and for a valuable consideration. Every person who has actual notice of circumstances sufficient to put a prudent man upon inquiry as to a particular fact, and who omits to make such inquiry with reasonable diligence, is deemed to have constructive notice of the fact itself. The validity of the instrument as between the plaintiff and defendant [ ], therefore, depends upon whether she had notice of its existence at the time of her alleged purchase, and whether she was a purchaser in good faith, and for a valuable consideration. Notice of a prior unrecord-

3. While the deed was recorded in Minnehaha County prior to Department's filing of the tax lien, the deed had to be recorded in the county in which the property was located, Lincoln County. SDCL 43–28–1. Because the deed was not recorded in Lincoln County, however, until after the filing of the tax lien, the deed was valid only "as between the parties thereto and those who [had] notice thereof." SDCL 43–28–14. Defendants failed to prove that Department had notice of the transfer prior to the filing in Lincoln County.

4. We note that this is listed as a conclusion of law by the trial court. However, we believe it is a finding of fact which we review under the clearly erroneous standard.

ed conveyance, or of any title, legal or equitable, to the premises, or knowledge and notice of any facts which would put a prudent person upon inquiry, impeaches the good faith of the subsequent purchaser.

*Id.* at 196 (citations omitted).

■ According to testimony presented at trial, Dion only recorded two of every three guest checks on the cash register at the Time–Out. *See State v. Karras,* 438 N.W.2d 213, 215 (S.D.1989) (noting that agents of the Department observed that many meal transactions were not rung up on the cash register. Former employees indicated that their wages were paid partly by cash disbursements which were not reported for income tax purposes and tax and other items were not withheld). As a result, only approximately two-thirds of the Time–Out's actual receipts were recorded and Karras' sales tax went unremitted to that extent. *Id.* Unrecorded and unremitted sales tax becomes a lien upon the taxpayer's property at the time the tax was due and delinquent. SDCL 10–59–11.

At the time of Dion's alleged purchase from Karras, Dion, as the operator of the cash register, had knowledge and notice of the fact that only approximately two-thirds of the guest checks were being entered on the cash register reducing Karras' recording and remitting of sales tax. Knowledge and notice of these facts was sufficient to put a prudent person on notice or, at the very least, inquiry. Dion's good faith as a subsequent purchaser was impeached. *Betts,* 46 N.W. at 196. Accordingly, the benefits and protections of SDCL 10–59–11 are reserved for non-family members who are not intricately involved in that part of taxpayer's business accountable for the delinquencies.

### Purchaser for Value

As noted above, the trial court concluded that while the July 5 deed to Dion was a gift, the transfer of the 71 acres was for value.[5] It is undisputed that Dion did not pay any

consideration at the time of the conveyance. She allegedly verbally assumed and paid the outstanding debt of approximately $45,000.00 later. The final payment, however, of approximately $21,000.00 was not paid until September 1, 1986, almost two months after Department recorded its tax lien.

In *United States v. Galvin,* 199 F.Supp. 4 (E.D.N.Y.1961), taxpayer transferred property subject to three mortgages to her son who paid her either nothing or a merely nominal cash consideration. A year later, the son transferred the property to his wife for no consideration or nominal cash consideration. The IRS was auditing a prior return of the taxpayer prior to the first transfer, but did not serve the taxpayer with notice of a tax deficiency until after the transfer to the son.

The United States argued at trial that the transfers were subject to the IRS lien even though its lien was not filed until after the first transfer because the son was not a "purchaser." The son and his wife claimed that the transfers to them were based on valuable consideration in that they took the property subject to three existing real estate mortgages. The district court found the contention of the son and his wife without merit. According to the court:

> Section 6323(a) [ ] defines the persons against whom a lien is not valid until filed as "any mortgagee, pledgee, purchaser, or judgment creditor." These defendants obviously were not mortgagees, pledgees, or judgment creditors. Nor were they "purchasers," as defined in the case of *United States v. Scovil,* 348 U.S. 218, at page 221, 75 S.Ct. 244, at page 247, 99 L.Ed. 271: "A purchaser within the meaning of § 3672 [of the Internal Revenue Code of 1939 (now Section 6323 of the Internal Revenue Code of 1954) ] usually means one who acquires title for a valuable consideration in the manner of vendor and vendee." [ ] Concededly, Irving M. Galvin paid his mother either no or a merely nominal *cash* consideration, so that they were hardly in the

---

**5.** Karras presented testimony to the trial court that the property was valued at the time of the conveyance between $600.00 and $800.00 per acre. This results in a property valuation of between $42,600.00 and $56,800.00 for the 71

acre tract. We cannot conclude that the trial court's finding of fact that as of July 5, 1985, the value of the Lincoln County property was $600.00 per acre was clearly erroneous.

position of vendor and vendee. That was equally true of his transfer of title to his wife on June 4, 1957, *after* the lien had been filed. The fact that the son took the property subject to the mortgages of record was not, in my opinion, sufficient to meet the exceptions provided for in Section 6323(a)[.]

*Galvin,* 199 F.Supp. at 6 (emphasis in original). As in *Galvin,* Dion paid Karras no consideration at the time of the transfer. The fact that Dion took the 71 acres subject to the indebtedness was not sufficient to meet the exceptions provided for in SDCL 10–59–11. Under these facts and circumstances, Dion was not a purchaser for value without notice of Department's sales tax lien.

**2. Whether the deed from Karras to Dion was void under SDCL 43–28–17 as against Department because it was recorded after the sales tax lien.**

SDCL 43–28–17, which is entitled in part "Priority of first recorded conveyance of real property," provides:

*Every conveyance of real property ... is void as against any subsequent* purchaser or *encumbrancer* including an assignee of a mortgage, lease, or other conditional estate of the same property, or any part thereof *in good faith and for a valuable consideration whose conveyance is first duly recorded.* The term "conveyance" as used in this section, embraces every instrument in writing by which any estate or interest in real property is created, aliened, mortgaged, or encumbered or by which the title to any real property may be affected, except wills and powers of attorney.

(Emphasis added.)

▮ Department argues that it had no notice of the transfer prior to recording its lien because the deed from Karras to Dion was not recorded in Lincoln County until five days after Department recorded its sales tax lien. Therefore, Department argues that the transfer is void because Department was an encumbrancer that in good faith and for valuable consideration first duly recorded its lien. The trial court, citing *Murphy v. Plankinton Bank,* 13 S.D. 501, 83 N.W. 575 (1900), concluded however, that Department was not a purchaser or encumbrancer in good faith without notice because a filer of a statutory lien for taxes is nothing more than an attachment creditor. We find *Murphy* unpersuasive under these facts and circumstances.

In 1959, a South Dakota Attorney General's Opinion interpreted South Dakota's recording statute, SDCL 43–28–17. The question was whether county aid liens are an "encumbrance" within the meaning of the statute so that the liens have priority over the rights of a holder of an unrecorded deed. The Attorney General, citing *Willsie v. Rapid Valley Horse–Ranch Co.,* 7 S.D. 114, 63 N.W. 546 (1895), defined an encumbrance as a lien and concluded that "county aid liens filed before a deed was recorded are valid liens against the property." Op. Att'y Gen. 83 (1959–60). For these, and the following reasons, we agree with the rationale of this Attorney General's Opinion.

SDCL 43–25–19 defines " 'encumbrances' [to] include[ ] taxes, assessments, and all liens upon real property." Present consideration is defined elsewhere in the code to include the "payment of taxes and any other obligation due the state of South Dakota[.]" SDCL 22–41–2.1.[6] Therefore, State was an "encumbrancer" under SDCL 43–28–17. We overrule *Murphy v. Plankinton Bank* to the extent that it is inconsistent with our holding herein. The trial court erred in concluding that Department was not an encumbrancer in good faith, for valuable consideration, and without notice and the deed from Karras to Dion is void under SDCL 43–28–17 as against Department because it was recorded after the sales tax lien was recorded. We reverse and remand.

**3. Whether the trial court correctly dismissed the quiet title action.**

Department argues that it is entitled to ownership, possession, and quiet title to the

6. *See also* SDCL 22–1–2(7) which defines consideration as "any type of property or thing of legal value, whether delivered in the past, present or to be delivered in the future. The term includes an unfulfilled promise to deliver. The term may include an advantage or benefit to the promisor or a loss or detriment to the promisee. Any amount, advantage or inconvenience, no matter how trifling, is sufficient to constitute consideration[.]"

Lincoln County properties. The trial court held, however, that there was no evidence to support a quiet title action and dismissed Count II of Department's complaint to quiet title.

SDCL 21–41–1 provides in part that:

> An action may be maintained by any person or persons having or claiming to have an estate or interest in or lien or encumbrance upon any real property, whether in or out of possession thereof and whether such property is vacant or occupied, against any person or persons claiming an estate or interest in or lien or encumbrance upon the same or any part thereof for the purpose of determining such adverse interest, estate, lien, or encumbrance[.]

■ Contrary to the allegations of Karras, all Defendants named in the title to the action were served with a summons and complaint "substantially" in the form indicated in SDCL 21–41–7. Plaintiff's Exhibit # 4, an "Ownership and Encumbrance Report Update" dated August 5, 1991, indicates that a Notice of Lis Pendens was filed with the Lincoln County Register of Deeds on June 20, 1991. While the court *may* grant an order for the service of the summons upon defendants who are unknown, it does not appear under SDCL 21–41–9 that publication to all unknown defendants is mandatory. The action would be binding, however, only on those actually served. Our review of the applicable statutes and the evidence presented indicates that the trial court improperly dismissed Department's quiet title action as to Karras, Dion, and Donald. We reverse and remand on this issue.

In view of our holding on these issues, it is unnecessary to reach the other issues raised by the parties or we have determined them to be without merit. Accordingly, appeal # 18306 is reversed and appeal # 18373 is affirmed.

MILLER, C.J., and WUEST and AMUNDSON, JJ., concur.

HENDERSON, J., concurs specially in part and concurs in result in part.

HENDERSON, Justice (specially concurring; concurring in result).

### Issue 1

Based upon the following rationale and authorities, I specially concur on Issue 1.

SDCL 10–59–11 begins, "Any tax, penalty or interest due from a taxpayer is a lien in favor of the state upon all property and rights to property whether real or personal belonging to the taxpayer ..." I agree with the majority's interpretation that the sales tax lien attached to the property at the time the tax is due. *Thus, every taxpayer who collects a sales tax essentially has a lien against the property of the taxpayer.* For Dion's title to take priority over the sales tax lien, she must be a purchaser for value without actual notice of the lien. SDCL 10–59–11. Based upon the following, Dion was not a purchaser for value. Hence, the lien was perfected.

From 1982 through 1985, Time–Out Steakhouse and Restaurant was under intense investigation by the Department of Revenue and Internal Revenue Service. Time–Out was owned and operated by Chris Karras. *Karras v. State, Dept. of Revenue,* 441 N.W.2d 678 (S.D.1989). In January of 1985, Time–Out was incorporated with Chris and his family named as individual corporate officers and directors. On June 12, 1985, Chris was served with a summons to appear before the IRS with all of his business records. On July 5, 1985, he transferred several pieces of real property, including his control of Time–Out, to his wife, Dion.

Dion paid no consideration to Chris in exchange for the deeds. However, she supposedly assumed the loan on the 71 acre tract and paid it off as scheduled. Evidence strongly indicates that Chris continued to treat the property as his own and used his money to pay off the loan on the 71 acres. Such a facade equates to lack of consideration for the conveyances. *Buhl v. McDowell,* 51 S.D. 603, 216 N.W. 346 (1927). Dion has failed to prove the existence of a bona fide transaction. *Buhl,* 216 N.W. at 347;

*Churchill & Alden Co. v. Ramsey*, 45 S.D. 454, 188 N.W. 742 (1922).*

The July 5, 1985 land conveyances have also been examined in federal court. In *Karras v. Karras*, 16 F.3d 245 (8th Cir.1994), Chris transferred several other properties—not those at issue here—to Dion who thereafter executed a mortgage on part of the property to her children. Meanwhile, the IRS filed a lien against the property and the children attempted to foreclose the mortgage. Affirming summary judgment granted to the United States, via the IRS, the Eighth Circuit held:

> The record also contained default admissions that Chris did not receive reasonably equivalent value for the conveyance, that Dion did not assume the mortgages on the properties in her own name, and that Chris continued to make mortgage payments. Thus, the record before the court established that Dion did not give fair consideration for the conveyance.

16 F.3d at 247. Chris Karras' slight of hand did not fool the federal court nor should the same *modus operandi* prevail in the courts of South Dakota. The sales tax lien was perfected. SDCL 10–59–11.

Although I concur that Dion was not a purchaser for value, I disagree that she had *actual* notice. According to Department investigators, Dion had a habit of not recording every guest check presented to her when she operated the cash register at her husband's business. Thus, the sales tax collected was not being recorded. She had actual knowledge of a failure to remit a sales tax due. An unperfected lien was automatically created per SDCL 10–59–11. Because of this fact, majority states, "Knowledge and notice of these facts was sufficient to put a prudent person on notice or at the very least, inquiry."

This very sentence *is* the definition of "constructive notice." SDCL 17–1–4. Dion may have been on constructive notice, but any notice she may have had would be that the business was subject to a sales tax lien.

It cannot be said that she had actual notice that real property, separate and apart from the business, would also be subject to said lien. If one reads our previous decisions in this entire Karras scenario, it is not expressed that Dion owned this business or that she was prosecuted for any sales tax deficiencies. A sales tax deficiency was against Chris Karras, d/b/a the Time–Out Restaurant. As the plain language of SDCL 10–59–11 states, *actual notice is the standard. Constructive notice is not enough.* Perforce, the lien did not effectuate any priority based on actual notice.

Furthermore, the final sentence of the majority's discourse on "Notice" stretches the interpretation of SDCL 10–59–11 beyond its plain language. SDCL 10–59–11 should not be restricted to "non-family members who are not intricately involved in that part of taxpayer's business accountable for the delinquencies." Such language is a forced interpretation. As we have upheld the sales tax lien due to lack of consideration, there is no need to expand the concept of notice in SDCL 10–59–11.

### Issue 2

Based upon the following rationale and authorities, I concur in result on Issue 2.

SDCL 43–25–17 controls the " 'race to the courthouse' situation as it relates to prior recorded conveyances which were recorded in good faith and made for valuable consideration." *Taylor v. Tripp*, 330 N.W.2d 542, 545 (S.D.1983). Department's lien was recorded in Lincoln County on July 23, 1986, five days before Dion recorded her deed. Dion had received the deed over a year earlier.

Under *Murphy v. Plankinton Bank*, 13 S.D. 501, 83 N.W. 575 (1900), an unrecorded deed is good as against an attaching creditor. Department qualifies as an attaching creditor. As such, its judgment lien could only attach and become operative on whatever title and interest the lien debtor (Karras) had, if any, in the property at the time of the lien's perfection. Because Karras sold the

---

* *See also Rushmore State Bank v. Kurylas, Inc.*, 424 N.W.2d 649, 662 (S.D.1988), which adopted the same rationale as *United States v. Galvin*, 199 F.Supp. 4 (E.D.N.Y.1961). There is no need to go to a federal court in New York when we already have pertinent authorities in South Dakota.

disputed property to Dion before the lien was perfected, there was nothing upon which the Department could attach.

The *Murphy* rationale was also followed in *Bliss v. Tidrick*, 25 S.D. 533, 127 N.W. 852 (1910); *Haynie v. Bennett*, 22 S.D. 65, 115 N.W. 515 (1908); *Kohn v. Lapham*, 13 S.D. 78, 82 N.W. 408 (1900); *Roblin v. Palmer*, 9 S.D. 36, 67 N.W. 949 (1896); *Bateman v. Backus*, 4 Dak. 433, 34 N.W. 66 (1887).

However, *Reid v. Gorman*, 37 S.D. 314, 158 N.W. 780 (1916), undermined *Murphy*, its progeny and predecessors. It appears, by implication, that *Reid* overruled *Murphy* without saying so. Five years later, *Bucholz v. Hinzman*, 44 S.D. 336, 183 N.W. 993 (1921), specifically overruled *Murphy* in part. Since then, apparently no other case has held that an unrecorded deed is good as against an attaching creditor. *Reid* and *Bucholz* were the final chapters for over 60 years until the case at hand.

Additionally, the SDCL 43–25–19 definition of "encumbrances" includes tax liens. Through legislative definition, what once was an "attachment creditor" might now fall under the auspices of "encumbrance," thereby permitting such a lien to take priority over a previously unrecorded deed. It would appear that the *Murphy* precedent has been abandoned. Therefore, relying upon the Attorney General opinion (Op. Att'y Gen. 83 (1959–60)) is misplaced and irrelevant. It does not have the legal effect of a judicial decision. *County of Spink v. Heinold Hog Market, Inc.*, 299 N.W.2d 811, 812 (S.D.1980).

Reaching an opinion, in any given decision, presents a question concerning the *manner* in which the conclusion was reached. Another appropriate inquiry is to determine if the conclusion is *justifiable*. An inquiring mind, seeking justification for the conclusion, reaches out desiring to know what factors were considered which produced the conclusion. But that same mind wants to know the *manner* whereby the conclusion is *justified*. Of course, all of this involves the basic premise of arriving at any decision, known as *legal reasoning*. But the legal decision process (how was the result reached?) is an interesting travel on the road to justice. There are different ways to justify a decision. Believing that the conclusion of the majority opinion is correct in its ultimate decision, I cannot subscribe *to the process of its justification*. Nevertheless, it is my opinion that justice has been rendered in this case.