1996 SD 15

**Bruce A. GRODE, Plaintiff and Appellee,**

v.

**Rose M. GRODE, Defendant and Appellant.**

**No. 19013.**

Supreme Court of South Dakota.

Considered on Briefs Oct. 16, 1995.

Decided Feb. 14, 1996.

---

Thomas P. Tonner of Tonner, Tobin & King, Aberdeen, for plaintiff and appellee.

Susan Margolies of Richardson, Groseclose, Wyly, Wise & Sauck, Aberdeen, for defendant and appellant.

AMUNDSON, Justice.

[¶ 1] Rose Grode (Rose) appeals the property division, amount of attorney fees, and child support granted by the trial court following her divorce from Bruce Grode (Bruce). We affirm in part, reverse in part and remand.

## FACTS

[¶ 2] Bruce and Rose (Grodes) were married on May 31, 1975, in Armour, South Dakota. From 1975 to 1979, the Grodes lived in South Dakota, Oklahoma and Kansas. Grodes had two boys during their marriage. In 1979, Bruce's brother, who farmed

with their father Don Grode (Father), was killed in an automobile accident. Father asked Bruce to move back to Bristol to help on the family farm. The Grodes did move back to Bristol in November 1979.

[¶ 3] Rose worked outside the home during the marriage, holding various teaching positions. Bruce has worked on the farm since his arrival in 1979. Bruce started farming with nothing and has acquired many of his assets from Father. Whether these assets were gifts, loans, or otherwise, has added heat to the controversy over the division of marital property.

[¶ 4] Bruce filed for divorce on January 3, 1994, on the grounds of irreconcilable differences and extreme mental cruelty. Rose counterclaimed, denying Bruce's complaint and claiming she was entitled to a divorce on the grounds of adultery, extreme mental cruelty, willful desertion and habitual intemperance. The trial court granted Rose the divorce based on mental cruelty, awarded custody of the minor children to Rose, set visitation and support, and divided the marital assets. The trial court also awarded Rose a property settlement of $103,000 and $5,000 of her attorney fees. Due to the nature of the assets, the trial court set up a pay schedule for eighteen years. The pay schedule included the $103,000 awarded to Rose via the property division and the $5,000 awarded in attorney fees, for a total of $108,000. Bruce is to pay $6,000 per year, plus interest, for eighteen years. There are many facts that are pertinent to this case. However, for the sake of clarity, we will address them as they pertain to the relevant issue. Rose appeals on the following issues:

I.  Whether the trial court abused its discretion in dividing the marital property?

    A.  Whether the trial court erred in its determination of the value of the marital estate?

    B.  Whether evidence should have been admitted that part of the value of the real estate purchased on contract for deed was a gift?

    C.  Did the trial court err in finding that part of the real estate purchased on a contract for deed was a gift?

    D.  Did the trial court err when it did not equitably distribute Bruce's nonvested military pension?

    E.  Whether the trial court erred by not making specific findings as to the missing money, grazing rights, and the crops in the ground?

II.  Was the use of an interest rate different than the judgment rate an abuse of discretion?

III.  Whether the trial court erred by not allowing Rose a security interest for her property payments?

IV.  Did the trial court err in its assessment of attorney fees for Rose?

V.  Did the trial court err in its computation of child support?

## STANDARD OF REVIEW

[¶ 5] We first note our standards of review in this case. We review a trial court's findings of fact under a clearly erroneous standard. In applying this standard, we will not overturn a valuation unless it is clearly erroneous. *DeVries v. DeVries,* 519 N.W.2d 73, 75 (S.D.1994) (citations omitted). All conflicts in the evidence must be resolved in favor of the trial court's findings. *Kost v. Kost,* 515 N.W.2d 209, 213 (S.D.1994). We review a trial court's conclusions of law under a de novo standard. *Bess v. Bess,* 534 N.W.2d 346, 347 (S.D.1995) (citing *Johnson v. Johnson,* 291 N.W.2d 776, 778 (S.D.1980)). We give no deference to the trial court under this standard of review. *Id.*

[¶ 6] Our standard of review of a trial court's property division is that of an "abuse of discretion." *Abrams v. Abrams,* 516 N.W.2d 348, 352 (S.D.1994); *Radigan v. Radigan,* 465 N.W.2d 483, 487 (S.D.1991); *Henrichs v. Henrichs,* 426 N.W.2d 569, 572 (S.D. 1988). We have stated several times: It is well settled that the trial court has broad discretion with respect to property division and, absent an abuse of discretion, its judgment will not be set aside. *Caughron v. Caughron,* 418 N.W.2d 791, 792 (S.D.1988);

*Tate v. Tate*, 394 N.W.2d 309, 311 (S.D.1986). "'The term 'abuse of discretion' refers to a discretion exercised to an end or purpose not justified by, and clearly against reason and evidence.'" *Paradeis v. Paradeis*, 461 N.W.2d 135, 137 (S.D.1990) (quoting *Bradeen v. Bradeen*, 430 N.W.2d 87, 91 (S.D.1988)); *see also Bennett v. Bennett*, 516 N.W.2d 672, 674 (S.D.1994) (citing *Chicoine v. Chicoine*, 479 N.W.2d 891, 895 (S.D.1992)).

■ [¶ 7] The standard of review for determining whether a trial court has appropriately adjudicated the child support obligations of a parent is whether the trial court abused its discretion in setting the support. *Nelson v. Nelson*, 454 N.W.2d 533, 534 (S.D. 1990). In this review, we do not determine whether we would have made an original like ruling, but whether a judicial mind, in view of the law and circumstances of the particular case, could reasonably have reached such a conclusion. *Id.; see also Sjolund v. Carlson*, 511 N.W.2d 818, 820 (S.D.1994) (citing *Johnson v. Johnson*, 468 N.W.2d 648, 650 (S.D. 1991)).

## ANALYSIS

[¶ 8] **I. Division of the marital property.**

■ [¶ 9] Among several contentions made by Rose's appeal is her claim that the court abused its discretion in making an inequitable distribution of the property. In evaluating such a claim, we must remember that a trial court "'is not bound by any mathematical formula but shall make such award from the material factors before [it] having due regard for equity and the circumstances of the parties.'" *Hanson v. Hanson*, 252 N.W.2d 907, 908 (S.D.1977) (quoting *Kressly v. Kressly*, 77 S.D. 143, 150, 87 N.W.2d 601, 605 (1958)); SDCL 25-4-44.

■ [¶ 10] The factors to be considered in dividing marital property are the (1) duration of the marriage, (2) value of the property owned by the parties, (3) ages of the parties, (4) health of the parties, (5) competency of the parties to earn a living, (6) contribution of each party to the accumulation of property, and (7) income-producing capacity of the property owned by the parties. *Johnson v. Johnson* 471 N.W.2d 156, 159 (S.D.1991);

*Ryken v. Ryken*, 461 N.W.2d 122, 126 (S.D. 1990); *Saint-Pierre v. Saint-Pierre*, 357 N.W.2d 250, 258 (S.D.1984). "It is axiomatic that each case must be judged upon its own set of facts." *Abrams*, 516 N.W.2d at 353 (Henderson, J., dissenting).

[¶ 11] *A.  Value of the marital estate.*

[¶ 12] With these principles in mind, we examine the individual claims of abuse. Rose asserts the trial court incorrectly valued the marital estate by excluding certain farm equipment, part of the family farm, Bruce's military pension, crops, grazing rights, and monies earned by Bruce.

■ [¶ 13] We note that Bruce and Father testified that a $29,000 loan existed on farm machinery and equipment. To that end, Father testified that he "probably [would have] given Bruce the machinery when I quit farming but things got so complicated now[.]" When asked by Rose's counsel if he meant the divorce action is what made things complicated, Father replied, "[r]ight." In this case, there is no written documentation to support this alleged loan. Furthermore, during the intervening fourteen years since Bruce began farming, Bruce has never made a single interest or principal payment upon this alleged "loan," nor has Father demanded as much. Bruce has treated this machinery and equipment as his own by using it for trade-ins, taking depreciation deductions on his tax returns, and listing it as his property, yet he has never mentioned the "loan" before. We have noted that written documentation is favored to prove the existence of a loan. *See Cole v. Cole*, 384 N.W.2d 312, 315 (S.D.1986). This factor is even more important when we are dealing with an inter-family loan.

[¶ 14] The evidence did not establish a bona fide loan. *State ex rel. Dept. of Rev. v. Karras*, 515 N.W.2d 248, 251 (S.D.1994); *Buhl v. McDowell*, 51 S.D. 603, 607, 216 N.W. 346, 347 (1927); *Churchill & Alden Co. v. Ramsey*, 45 S.D. 454, 461, 188 N.W. 742, 744 (1922). Therefore, regardless of Bruce's and Father's self-serving declarations and based on the evidence and record herein, we find the trial court abused its discretion in consid-

ering this "loan" as part of the marital estate debts. *See Karras*, 515 N.W.2d at 251.

### [¶ 15] B. Evidence received regarding the farm as a gift.

[¶ 16] Rose claims it was improper for the trial court to admit evidence establishing the grant of part of the farm to Bruce as a gift from Father. Specifically, the trial court heard testimony from Bruce, Father, and Father's accountant, Darrell Strivens.[1] The trial court has broad discretion in admitting evidence. *Zepp v. Hofmann*, 444 N.W.2d 28, 31 (S.D.1989). This court will only disturb decisions of the trial court regarding the admission of evidence if there is a clear abuse of discretion. *Id.; Magbuhat v. Kovarik*, 382 N.W.2d 43, 46–7 (S.D.1986).

[¶ 17] Trial courts are required to assess how marital assets are acquired prior to dividing same. *See* SDCL 25–4–44; *Endres v. Endres*, 532 N.W.2d 65, 68 (S.D.1995). This testimony was appropriate for such a decision. The trial court did not abuse its discretion by admitting this evidence. *Peterson*, 434 N.W.2d at 734.

### [¶ 18] C. Determination of part of the farm as a gift.

[¶ 19] Next, Rose claims the trial court abused its discretion when it characterized one-third of the farm real estate as a gift to Bruce and, therefore, excluded it from the valuation of marital property. The trial court's findings of fact are presumptively correct and the burden is upon appellant to show error. *Adam v. Adam*, 436 N.W.2d 266, 267 (S.D.1989); *Temple v. Temple*, 365 N.W.2d 561, 565 (S.D.1985); *Hilde v. Flood*, 81 S.D. 25, 28, 130 N.W.2d 100, 101 (1964).

[¶ 20] It is within the trial court's discretion to determine whether or not the total value of any marital asset should be included in the equitable division. *Cole*, 384 N.W.2d at 314. In this case, the trial court heard testimony from Bruce, Father, and Strivens regarding the transaction and how the purchase price was reduced to allow

Bruce to purchase the farm without subjecting Father to a gift tax. The accountant was an uninterested third party.

[¶ 21] It was, therefore, within the trial court's discretion whether or not to consider the whole family farm as part of the property to be divided. *Buseman v. Buseman*, 299 N.W.2d 807, 809 (S.D.1980); *Clement v. Clement*, 292 N.W.2d 799, 801 (S.D. 1980); *Andera v. Andera*, 277 N.W.2d 725, 729 (S.D.1979). Trial courts are also required to determine the credibility of witnesses that testify at trial. *Kost*, 515 N.W.2d at 213 (citations omitted). The trial court obviously did this and it is not an appellate court's place to interfere. "This represents another case where we are being asked to fine-tune the handiwork of those to whom the decision of marital property has been entrusted. We refuse to do so without a stronger showing than is presented here." *Buseman*, 299 N.W.2d at 810. We hold that the trial court's finding that the farm was a gift is not clearly erroneous.

### [¶ 22] D. Bruce's nonvested pension.

[¶ 23] During Grodes' marriage, Bruce was a member of the National Guard for seventeen years. Throughout this period, he has been earning points toward a pension. In order for a National Guard pension to be vested, the guard member must be enrolled for twenty years. Rose claims she is entitled to an equitable division of this pension. Bruce states that, since the pension is not vested, it cannot be equitably divided. First we must tackle some basic marital property terminology. A pension is "vested" when an employee completes the period of employment required to secure an indefeasible entitlement to a pension payable upon retirement. Grace Ganz Blumberg, *Marital Property Treatment of Pensions, Disability Pay, Workers' Compensation, and Other Wage Substitutes: An Insurance, or Replacement, Analysis*, 33 UCLA LRev 1250, 1259 (1986). After a pension vests, the employee may leave his job for any reason and still receive the benefits from the pension.

---

1. The testimony elicited described how Father set up the transfer with his accountant to allow Bruce to afford to purchase the farm with a part

of the value to be designated as a gift under the $10,000 gift tax exemption.

*Id.* A "nonvested" pension is a pension that has not fulfilled the time period requirement. *Id.* at 1260.

[¶ 24] This court has repeatedly held that retirement plans accrued during the marriage, whether contributory or noncontributory, are divisible marital assets. *Bell v. Bell,* 499 N.W.2d 145, 147–48 (S.D.1993) (citing *Kanta v. Kanta,* 479 N.W.2d 505, 510 (S.D.1991); *Stemper v. Stemper,* 403 N.W.2d 405, 408 (S.D.1987); *Stubbe v. Stubbe,* 376 N.W.2d 807, 809 (S.D.1985)). "In South Dakota a retirement plan has been recognized as a divisible marital asset since it represents consideration in lieu of a higher present salary. Contributions made to the pension plan would have been available to the family as disposable income during the marriage." *Stemper,* 403 N.W.2d at 408 (citations omitted).

[¶ 25] In *Abrams,* 516 N.W.2d at 353, the marital estate included three pension plans: (1) husband's vested retirement from the highway patrol; (2) husband's nonvested future pension from the National Guard; and (3) wife's nonvested federal employee pension (FERS). The trial court in *Abrams* found that the National Guard pension was not vested. However, the court determined that the husband's accrued service included thirteen years of service during the marriage. The wife was awarded one-half of the National Guard pension attributable to the service credited during the marriage, or 32.5% of the pension. *Id.* This court affirmed this award as part of the equitable distribution of the marital assets. *Id.*

[¶ 26] In addition, several other jurisdictions recognize nonvested pensions as marital property. In *In re Marriage of Brown,* 15 Cal.3d 838, 126 Cal.Rptr. 633, 544 P.2d 561 (1976), the California Supreme Court reversed its earlier treatment of nonvested pensions as nonmarital property not subject to distribution. The *Brown* court indicated the contingent nature of nonvested pension interests should be taken into account in determining how the asset should be divided. Therefore, if the court is unable to attach a present value, the court can "award each spouse an appropriate portion of each pension payment as it is paid." *Brown,* 15 Cal.3d at 848–49, 126 Cal.Rptr. at 639, 544 P.2d at 567 (citations omitted). A majority of jurisdictions have adopted the same rule as the *Brown* court, that all pensions, whether vested or nonvested, are marital property subject to distribution.[2] We align ourselves with these jurisdictions.

[¶ 27] Under settled law in this state, the omission of assets which should properly be included as marital property is an abuse of discretion. *Gibson v. Gibson,* 437 N.W.2d 170, 171 (S.D.1989). Therefore, we remand for determination of Rose's interest in this military pension.

[¶ 28] *E. Absence of findings of fact.*

[¶ 29] Rose also requested the trial court to distribute the grazing rights held by Bruce and the crops that had not yet been harvested at time of trial. Also, Rose alleged there was a substantial amount of money missing from Bruce's financial statement. None of these facts were disputed by Bruce. Unfortunately, the trial court failed

---

2. *See Van Loan v. Van Loan,* 116 Ariz. 272, 569 P.2d 214 (1977); *Day v. Day,* 281 Ark. 261, 663 S.W.2d 719 (1984); *Thompson v. Thompson,* 183 Conn. 96, 438 A.2d 839 (1981); *Robert C.S. v. Barbara J.S.,* 434 A.2d 383 (Del.1981); *Linson v. Linson,* 1 Haw.App. 272, 618 P.2d 748 (1980); *Shill v. Shill,* 100 Idaho 433, 599 P.2d 1004 (1979); *Sims v. Sims,* 358 So.2d 919 (La.1978); *Deering v. Deering,* 292 Md. 115, 437 A.2d 883 (1981); *Dewan v. Dewan,* 17 Mass.App.Ct. 97, 455 N.E.2d 1236 (1983); *Hatcher v. Hatcher,* 129 Mich.App. 753, 343 N.E.2d 498 (1983); *Janssen v. Janssen,* 331 N.W.2d 752 (Minn.1983); *Kuchta v. Kuchta,* 636 S.W.2d 663 (Mo.1982); *In re Marriage of Laster,* 197 Mont. 470, 643 P.2d 597 (1982); *Kullbom v. Kullbom,* 209 Neb. 145, 306 N.W.2d 844 (1981); *Berry v. Meadows,* 103 N.M. 761, 713 P.2d 1017 (1986); *Cohen v. Cohen,* 104 A.D.2d 841, 480 N.Y.S.2d 358 (1984), *appeal dismissed,* 64 N.Y.2d 773, 475 N.E.2d 457, 485 N.Y.S.2d 990 (1985); *Glass v. Glass,* 344 N.W.2d 677 (N.D.1984); *Bohnlein v. Bohnlein,* 11 Ohio Misc.2d 16, 463 N.E.2d 666 (1983); *Carpenter v. Carpenter,* 657 P.2d 646 (Okla.1983); *Flynn v. Flynn,* 341 Pa.Super. 76, 491 A.2d 156 (1985); *Cearley v. Cearley,* 544 S.W.2d 661 (Tex.1976); *Woodward v. Woodward,* 656 P.2d 431 (Utah 1982); VaCode § 20–107.3(E)(8) (Supp 1982); *Wilder v. Wilder,* 85 Wash.2d 364, 534 P.2d 1355 (1975)(en banc); *Bloomer v. Bloomer,* 84 Wis.2d 124, 267 N.W.2d 235 (1978).

to make findings of fact regarding these three assets. It is well-settled law that it is the trial court's duty to make required findings of fact, and the failure to do so constitutes reversible error. *Endres*, 532 N.W.2d at 67; *Gibson*, 437 N.W.2d at 171; *Prentice v. Prentice*, 322 N.W.2d 880, 882–83 (S.D. 1982). The absence of findings on these issues makes meaningful review impossible. *DeVries*, 519 N.W.2d at 77; *Pennock v. Pennock*, 356 N.W.2d 913, 915 (S.D.1984). Therefore, we reverse and remand for the trial court to enter findings of fact in regard to these three assets.

[¶ 30] **II. Interest rate of property division.**

[¶ 31] In setting the periodic payments, the trial court established the following interest rates: (1) First year will carry one percent interest; (2) second year will carry two percent interest; (3) third year will carry three percent interest; (4) fourth year will carry four percent interest; (5) fifth year will carry five percent interest; (6) sixth year will carry six percent interest; (7) seventh year will carry seven percent interest; and (8) for the remainder of the contract the rate remains at seven percent. At any time, if Bruce defaults, the interest rate becomes that which is the legal rate for judgments. Rose claims this interest rate schedule is inequitable.

[¶ 32] The rules regarding interest on deferred property division payments were set forth in *Lien v. Lien*, 278 N.W.2d 436 (S.D.1979), where we stated:

> [If] for the convenience of the husband he is permitted to make a property division by paying his wife her share of the marital property in cash in [installments,] . . . as a general rule any deferred payments should bear interest at the going rate; otherwise, the wife is not actually receiving the property division to which the court has determined she is entitled.

*Id.* at 444. There can be exceptions to this rule. A trial judge can properly set an interest rate on deferred payments at a rate lower than the going rate if the lower rate is an integral part of the overall plan for property division. *Balvin v. Balvin*, 301 N.W.2d 678, 681 (S.D.1981).

[¶ 33] The division of property in a divorce action is designed to settle with finality the property rights of the parties as of the time of entry of judgment. *Holt v. Holt*, 84 S.D. 671, 674, 176 N.W.2d 51, 53 (1970). We are not satisfied that such is the fact in this case. Although the trial court was cognizant of the need to "keep this ship afloat," this interest cannot outweigh Rose's present interest in receiving property that rightfully belongs to her. Setting an interest rate at one percent increments per year for seven years does not meet the standard used to divide marital property. Rose should receive the present value of her property settlement. *See Balvin*, 301 N.W.2d at 681. A one percent interest rate does not meet this test. Therefore, the trial court should reconsider what an appropriate rate of interest would be under this fact situation.

[¶ 34] **III. Security interest for property division.**

[¶ 35] SDCL 25–4–42 states: "The court may require a spouse to give reasonable security for providing maintenance, or making any payment required under the provisions of this chapter. . . ." (Emphasis added.) The division of property is a provision of SDCL ch. 25. *See* SDCL 25–4–44. Therefore, allowing a security interest for a property division is within the sound discretion of the trial court. We will not overturn the trial court's decision unless there is an abuse of discretion. *Vander Pol v. Vander Pol*, 484 N.W.2d 522, 524 (S.D.1992); *Kanta*, 479 N.W.2d at 507; *Johnson*, 471 N.W.2d at 159; *Fox v. Fox*, 467 N.W.2d 762, 766 (S.D. 1991). While this discretion is broad, it is not uncontrolled and must be soundly and substantially based on the evidence. *Gibson*, 437 N.W.2d at 171; *Goehry v. Goehry*, 354 N.W.2d 192, 194 (S.D.1984); *Owen v. Owen*, 351 N.W.2d 139, 141 (S.D.1984).

[¶ 36] The trial court determined at the motion for reconsideration hearing that placing a security interest on Bruce's property would "put too much pressure on [Bruce] then [Rose] may not—may end up with nothing. . . ." However, the tenuous situation that Bruce is in already could lead him down

the road to bankruptcy. This court recognized in *Hogie v. Hogie*, 527 N.W.2d 915, 918 (S.D.1995), that property division payments are dischargeable in bankruptcy. Therefore, by not giving Rose a security interest, the trial court has left Rose in an unsecured position if Bruce declares bankruptcy. The trial court needs to protect Rose while not inhibiting Bruce from securing aid from outside creditors. In light of the length of this installment schedule, to insure that Rose receives her share of the property, an appropriate provision can be set up so that Bruce can still negotiate with creditors. The trial court shall reconsider this issue on remand.

### [¶ 37] IV. Amount of attorney fees.

[¶ 38] SDCL 15–17–38 sets out a two-step process to award attorney fees in divorce cases. In determining whether to award attorney fees, a trial court must first consider what constitutes a reasonable fee. *Kier v. Kier*, 454 N.W.2d 544, 547 (S.D.1990) (citations omitted); *Lien*, 278 N.W.2d at 443. Second, the court must decide what portion of the fee, if any, should be allowed as costs to be paid by the opposing party. *Kier*, 454 N.W.2d at 547. In making its award, if any, the trial court should consider the following factors: (1) The property owned by each party; (2) their relative incomes; (3) liquidity of the parties' assets; and (4) whether a party has unreasonably increased the time spent on the case. *Johnson v. Johnson*, 300 N.W.2d 865, 870 (S.D.1980); *Wallahan v. Wallahan*, 284 N.W.2d 21, 28 (S.D.1979). Additional factors to be considered are: (1) the intricacy and importance of the litigation; (2) labor and time involved; (3) the skill required to draw the pleadings; (4) discovery procedures utilized; (5) existence of complicated legal problems; (6) the time required to try the case; (7) whether written briefs were required; and (8) whether an appeal to this court is involved. *Garnos v. Garnos*, 376 N.W.2d 571, 575 (S.D.1985) (citations omitted). On an appeal to this court these elements are also considered. *Rykhus v. Rykhus*, 319 N.W.2d 167, 171 (S.D.1982); *Lien*, 278 N.W.2d at 443.

[¶ 39] The allowance of attorney fees rests in the sound discretion of the trial court. *Garnos*, 376 N.W.2d at 575. We will not overturn the trial court's award of attorney fees absent an abuse of discretion. *Steffens v. Peterson*, 503 N.W.2d 254, 260 (S.D. 1993). The trial court awarded $5,000 in attorney fees to be paid over time together with the property division. The record reflects that the trial court considered the above-mentioned factors when setting this amount. Rose filed a motion to reconsider and the trial court again stated, "the $5,000 I think is fair and equitable as far as attorney fees." We find the trial court has not abused its discretion.

### [¶ 40] V. Computation of child support.

[¶ 41] Rose asserts the trial court erred in setting child support by not averaging Bruce's farm income over four years and excluding depreciation. SDCL 25–7–6.6 states: "The court may allow or disallow deductions for federal income taxation purposes which do not require the expenditure of cash, including, but not limited to, depreciation or depletion allowances...." (Emphasis added.) The trial court considered the income of Bruce and Rose in 1993 and, because of the unpredictability of farming, declined to include depreciation. The trial court did not abuse its discretion by not including depreciation when SDCL 25–7–6.6 clearly allows the trial court to do so. *See Studt v. Studt*, 443 N.W.2d 639, 644 (S.D. 1989). In addition, if either party's income changes, child support may be adjusted if there is a "change in circumstances." SDCL 25–7A–22.

[¶ 42] We have considered other issues asserted by counsel and have found them to be without merit. Therefore, we reverse in part, affirm in part, and remand for trial consistent with this opinion.

[¶ 43] MILLER, C.J., SABERS and KONENKAMP, JJ., concur.

[¶ 44] GILBERTSON, J., concurs in part and dissents in part.

GILBERTSON, Justice (concurring in part and dissenting in part).

[¶ 45] The only income producing asset that is at issue in this action is the family

farm. The trial court determined that it was in everyone's best interest to try to "keep this ship afloat enough so that he survives and she gets some money because if the ship goes under, she doesn't get anything anyway."[1] The trial court reasoned that the farm was in a difficult financial condition. In an attempt to keep the farm going as an income producing asset, the trial court found it necessary to set a lower than normal interest rate on payments due Rose and to authorize Bruce to acquire operating loans to put in a crop. To permit Bruce to seek such financing, the trial court allowed the creditors a preferred position to protect their loans by not providing Rose a security interest in the farm assets awarded to Bruce.

[¶ 46] This court has repeatedly faced the issue of trying to keep a family farm intact, yet uphold the policy of an equitable division of assets. In *Miller v. Miller*, 83 S.D. 227, 157 N.W.2d 537, 541 (1968), we recognized that keeping a family farm operating after a divorce was appropriate and the trial court's valuation of the farm which endangered that goal, was an abuse of discretion. In *Kittelson v. Kittelson*, 272 N.W.2d 86, 90 (S.D. 1978), we reversed an inequitable division of assets recommending to the trial court on remand that it consider two options, both of which would have continued the viability of that unit. However, in *Hanson v. Hanson*, 252 N.W.2d 907 (S.D.1977), we stated that while in *Miller* we had expressed a reluctance to require a lump sum payment that would necessitate a sale of a farm and thus put the farmer out of business, we must also make an award that is fair to the spouse. We concluded that absent making adequate arrangements for the spouse, "the court must acknowledge that an equitable division of the property is paramount to defendant's interest of keeping the ranch intact." *Id.* at 910.

[¶ 47] Nevertheless in *Krage v. Krage*, 329 N.W.2d 878, 880 (S.D.1983), we affirmed a property division keeping the ranch intact and refusing to reverse as it would "destroy the ranch as an economic unit and create undue tax liability." In *O'Connell v. O'Connell*, 340 N.W.2d 700, 702 (S.D.1983), we held that the ranch could be divided and each portion maintain its economic viability and thus no destruction of the unit would occur by such a division. Most recently in *Bennett v. Bennett*, 516 N.W.2d 672 (S.D.1994), we affirmed the doctrine of *Hanson* concerning the paramount duty of an equitable division. However, we noted that there was no evidence in the record that continued viability of the ranching operation required a deferred payment schedule for a property award. *Id.* at 676.

[¶ 48] These cases do not easily reconcile themselves to each other on all points. Perhaps that is because they are all fact-specific and are resolved on appeal by an abuse of discretion standard of review. However, they do suggest that for a trial court to consider attempting to keep the farm or ranch going as an economic unit it must find that: (1) there is evidence of a potential of economic viability if the unit stays intact; (2) the unit cannot maintain economic viability if it is divided; (3) this is the most reasonable method available for asset allocation to the parties and; (4) there must be an equitable division of assets.

[¶ 49] An equitable division of assets is mandated by SDCL 25–4–44. However, we should be mindful of SDCL 47–9A–1 which sets forth a legislative declaration of public policy as to the value of family farms to this state; "[t]he Legislature of the state of South Dakota recognizes the importance of the family farm to the economic and moral stability of the state...." As statutes are to be construed together, *Meyerink v. Northwestern Public Serv. Co.*, 391 N.W.2d 180, 184 (S.D.1986), in application of SDCL 25–4–44, the public policy of SDCL 47–9A–1 should be heeded.

---

1. Bruce was purchasing real estate from his father under a contract for deed which Rose claims is valued at $323,300.00 with only $125,-578.00 debt remaining. The problem is that Bruce has not always been current on his payments to his father and may face foreclosure if the farm cannot cash flow the principal and interest. If foreclosure results, with the repeal of SDCL 21–50–2 no equitable adjustment exists and not only would the farming operation cease, the equity in the land would also disappear.

[¶ 50] Turning to the case before us, the trial court attempted to do just that. It does Rose little good to have a higher interest rate set or give her a security interest that will cut off access to operating loans to keep the farm afloat. She is entitled to the $108,000 awarded her by the trial court which would be ultimately paid if the farm survives. The trial court, recognizing the economic difficulties before it, attempted to be fair to both parties in distributing the available property. This is not an easy task. Judges are not dispensers of manna from heaven. All too often "there are simply too few dollars to meet even the most modest standard of living ... (and judges) are called upon to apportion poverty and its accompanying misery...." *Ochs v. Nelson* 538 N.W.2d 527, 531 (S.D.1995) (citing *State ex. rel. V.K.H. v. S.W.*, 442 N.W.2d 920, 925 (S.D.1989)(Gilbertson, Circuit Judge, concurring)).[2]

2. Rose and Bruce are not the only persons who have a vested interest in the continued viability of the farm. Payment of Bruce's child support obligation of $638 per month for his two sons was also an issue with which the trial court was faced in this case.

3. While Rose sought protection of her asset award via a security interest, failure to acquire

[¶ 51] It is appropriate to allow a creditor willing to make an operating loan priority over Rose so that the farm may continue in operation. However, no case is made for not granting Rose a security interest against other subsequent creditors. While there are risks involved in the trial court's plan,[3] it allocated assumption of those risks to both parties in a fair manner with the exception of not allowing Rose a security interest against subsequent creditors other than operating loans.

[¶ 52] In all other respects I agree with the majority opinion.

that security interest does not leave her helpless. Should Bruce refuse to timely make payments when he has the ability to do so, the trial court could exercise its considerable contempt powers.