#27183-r-SLZ

**2015 S.D. 21**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

BARRY HOLLMAN and
MICHAEL PULKRABEK,                          Plaintiffs and Appellants,

    v.

SOUTH DAKOTA DEPARTMENT
OF SOCIAL SERVICES,                          Defendant and Appellee.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE FIRST JUDICIAL CIRCUIT
YANKTON COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE CHERYLE W. GERING
Judge

* * * *

DAVID D. KNOFF of
Kennedy Pier Knoff & Loftus, LLP
Yankton, South Dakota                          Attorneys for plaintiffs
                                               and appellants.


MARTY J. JACKLEY
Attorney General

JOE THRONSON
Special Assistant Attorney General
Department of Social Services
Pierre, South Dakota                          Attorneys for defendant
                                              and appellee.

* * * *

CONSIDERED ON BRIEFS
ON FEBRUARY 17, 2015
OPINION FILED **04/15/15**

ZINTER, Justice

[¶1.]     The Department of Social Services (DSS) provided Medicaid benefits to Darlene Hollman while she was in a nursing home. At that time, Hollman had an interest in real estate. DSS did not record a lien on the property for the benefits it had provided until after Hollman died. Hollman's children contested the lien's validity. The circuit court granted summary judgment for DSS, ruling that the lien had attached to Hollman's interest in the property even though the lien was not recorded until after her death. The court concluded that the lien recording requirement related to the question of priority between claimants rather than lien attachment. Hollman's heirs appeal. We reverse.

*Facts and Procedural History*

[¶2.]     Thomas White owned real estate in Yankton County. Upon White's death in 2001, Hollman, White's stepdaughter, inherited a one-fifth interest in the property subject to a life estate in her mother Lydia White. In 2005, Hollman began receiving Medicaid benefits from DSS for nursing home care. Hollman died intestate in 2008, while her mother was still alive. At the time of Hollman's death, DSS had paid $101,850.09 for her care. Hollman's children and DSS were apparently unaware of Hollman's remainder interest. The interest had never been disclosed to DSS, and her estate was not initially probated.

[¶3.]     However, when Lydia died in 2012, Hollman's remainder interest became a present interest, and a probate was then opened to transfer Hollman's interest to her two children. DSS was given notice of the probate on February 12, 2013. On February 22, 2013, DSS filed a claim against the estate for the nursing

home benefits it had provided. On March 11, 2013, the estate disallowed the claim because the three-year statute of limitations for creditor's claims had expired. That determination was not appealed by DSS. Instead, on March 21, 2013, DSS recorded a medical assistance lien on the property for the Medicaid benefits it had provided. The personal representative later executed a deed conveying Hollman's interest to her children, and the probate was closed without payment of DSS's claim.

[¶4.] Because Hollman's children wanted to sell their interest in the property, DSS released its lien in the amount of $101,850.09 and that sum was placed in escrow pending a judicial determination whether the lien was valid. A declaratory action was commenced, and both Hollman's children and DSS moved for summary judgment based on stipulated facts. The circuit court concluded that an enforceable medical assistance lien was created on the property at the time the nursing home assistance was provided. The court further concluded that Hollman's interest in the property transferred at death to the children subject to the lien. The court granted summary judgment in favor of DSS for the amount of the lien plus prejudgment interest.

[¶5.] Hollman's children appeal arguing, among other things, that medical assistance liens authorized in SDCL 28-6-24 and -25 do not "attach" to any particular real property until the lien is recorded. They also argue that under SDCL 29A-3-101, Hollman's interest vested in her children immediately upon her death. Because the lien was not recorded until four years after Hollman's death, her children contend that Hollman had no property interest to which the DSS lien could have attached. DSS, however, argues that the lien attached when DSS

provided the assistance. DSS contends that a statutory recording requirement is intended to regulate priority rather than attachment. Therefore, DSS contends that its lien attached before Hollman's death and the transfer to her children was subject to the lien.[1]

*Decision*

[¶6.] SDCL 28-6-24 provides: "Any payment of medical assistance by or through the Department of Social Services to an individual . . . is a debt and creates a medical assistance lien against any real property in which the individual has any ownership interest. . . . The lien so created shall be perfected against real estate as provided in § 28-6-25." SDCL 28-6-25 provides: "The register of deeds shall . . . *record* the medical assistance real estate lien in the real estate records, *at which time* the lien will *attach* to the real property interest of the recipient[.]" (Emphasis added.) Therefore, although SDCL 28-6-24 creates (and provides for perfection of) medical assistance liens, SDCL 28-6-25 specifically provides that the lien does not attach to real property until the lien is recorded.[2]

[¶7.] The circuit court correctly recognized that the "perfection" provisions of SDCL 28-6-24 and -25 are relevant in priority disputes between competing

---

1. The motions were based on a stipulation of facts, and the circuit court decided the matter as a question of law. We review that decision de novo. *Dakota Truck Underwriters v. S.D. Subsequent Injury Fund*, 2004 S.D. 120, ¶ 15, 689 N.W.2d 196, 201.

2. SDCL 28-6-24 and -25 were passed as a part of one act. 1994 S.D. Sess. Laws. ch. 229, §§ 2-3 ("An Act to establish medical assistance liens for certain recipients of medical assistance through the Department of Social Services and to require notice of probate and termination of life estates and joint tenancies to the Department of Social Services.")

interests. But that analysis does not address the predicate question of when, under this statutory scheme, a lien attaches to an interest. That omission is significant because liens authorized by statute do not necessarily attach. *See Muhlenkort v. Union Cnty. Land Trust*, 530 N.W.2d 658, 662 (S.D. 1995) ("[A]lthough [the] Judge . . . granted Muhlenkort a statutory lien on all real estate which Henry Muhlenkort had an interest, that lien never attached because Henry no longer had any real property interests."). *See also* SDCL Title Standards 11-01 ("A medical assistance lien created under SDCL 28-6 becomes a lien against real property only from the time the lien is filed with the Register of Deeds.").

[¶8.] DSS, however, argues that a statutory lien may "attach" merely by operation of statute. DSS cites the example of SDCL 10-59-11, a tax lien statute interpreted in *State ex rel. Dep't of Revenue v. Karras*, 515 N.W.2d 248, 250 (S.D. 1994) ("A sales tax lien attaches to the property of the taxpayer at the time the tax is due and delinquent and becomes perfected when Department records the lien with the register of deeds in the county where the taxpayer's property is located."). We acknowledge the distinction between perfection and attachment. But DSS's reliance on this example is misplaced. Unlike the medical assistance lien statutes at issue in this case, the tax lien statute construed in *Karras* did not specifically provide that attachment did not occur until recording.[3] Instead, the tax lien statute

---

3. "Any tax, penalty, or interest due from a taxpayer is a lien in favor of the state upon all property and rights to property whether real or personal belonging to the taxpayer. *In order to preserve the lien against subsequent mortgages, purchaser, or judgment creditors for value and without actual notice of the lien* on any property situated in a county, *the secretary may file* with the register of deeds of the county a notice of the tax lien in such form as

(continued . . .)

in *Karras* specifically provided that the purpose of filing was to establish priority against subsequent claimants.

[¶9.]        We also note that under DSS's interpretation the "attachment" requirement of SDCL 28-6-25 becomes surplusage. "We presume the Legislature does not insert surplusage into its enactments. Also, this court will not construe a statute in a way that renders parts to be . . . surplusage." *Nielson v. AT & T Corp.*, 1999 S.D. 99, ¶ 16, 597 N.W.2d 434, 439 (internal quotation marks omitted) (citations omitted). We therefore conclude that, under the specific language of SDCL 28-6-24 and -25, a medical assistance lien does not attach to an interest in real property until the lien is recorded.

[¶10.]       Because DSS did not record its lien until after Hollman's death, the next question is whether Hollman had an interest in the property to which a lien could attach at the time DSS recorded its lien. Hollman's children argue that under SDCL 29A-3-101, Hollman's interest in the property vested in her children immediately at the time of her death. Therefore, Hollman's children contend that at the time DSS recorded its lien, Hollman no longer had any interest in the real estate to which the lien could attach. We agree.

[¶11.]       "Upon the death of a person, that person's real and personal property devolves[,] . . . in the absence of testamentary disposition, to the heirs, . . . subject to . . . rights of creditors[.]" SDCL 29A-3-101. *See also In re Estate of Roehr*, 2001 S.D.

---

(. . . continued)

> he determines. The priority of the lien shall be determined as of the date the notice of tax lien is received and indexed by the register of deeds. The notice of tax lien shall create a lien in each county where the notice of tax lien is recorded." SDCL 10-59-11 (emphasis added).

85, ¶ 8, 631 N.W.2d 600, 602 (stating that title to real property becomes vested in testator's devisees upon death and even before probate). Concededly, SDCL 29A-3-101 provides that vesting occurs subject to the rights of creditors in the probate. However, Hollman's personal representative denied DSS's creditor claim in probate because it was barred by the statute of limitations, and DSS has not appealed that determination. Therefore, Hollman's interest devolved to her children immediately upon her death free of DSS's creditors claim.

[¶12.] DSS's medical assistance lien did not attach to Hollman's interest in the property before her death. Further, her interest passed to her children immediately upon her death. Because the lien had not been recorded at the time of her death, she had no interest upon which the lien could attach. Therefore, Hollman's interest passed to her children free of DSS's lien. Because we hold there was no enforceable lien, we do not address the remaining issues raised by the parties. Reversed.

[¶13.] GILBERTSON, Chief Justice, and SEVERSON, WILBUR, and KERN, Justices, concur.